LEOPOLDO MORENO v. STATE OF INDIANA.

[No. 3-1273A181. Filed November 5, 1975.]

442

*Max Cohen*, of Gary, for appellant.

*Theodore L. Sendak*, Attorney General, *Robert E. Dwyer*, Deputy Attorney General, for appellee.

STATON, P.J.—Moreno is appealing from his conviction of involuntary manslaughter.[1] He was found guilty by a jury and sentenced to one-hundred eighty (180) days and fined Seven Hundred Dollars ($700.00). On appeal, Moreno raises the following issues:

Issue One: Did the trial court err in denying Moreno's motion to suppress his confession?

Issue Two: Did the trial court err in denying Moreno's motion for discharge?

We affirm.

## I.

### Motion to Suppress

Moreno contends that the trial court erred in denying his motion to suppress his confession for three reasons:

1. He was not properly advised of his Miranda rights prior to confessing to police;
2. His confession was inadmissible under *Lewis* v. *State* (1972), 259 Ind. 431, 288 N.E.2d 138;
3. His confession was the product of an illegal arrest.

(1) Prior to trial, a hearing was held on Moreno's motion to suppress his confession. The evidence presented at this hearing was conflicting as to whether Moreno was advised of his Miranda rights prior to confessing to police. Moreno testified that he arrived at the Gary police station at approximately 6:30 p.m. on May 16, 1970 accompanied by his parents. He was then separated from his parents and questioned intermittently until approximately 9:00 p.m. when he confessed. He testified that he was not advised of his rights until after he had confessed and at that time he signed a waiver of rights form. In sharp contrast to Moreno's testimony, however, interrogating officers Musik and Muniz of the Gary Police Department testified that Moreno was orally advised of his

1. IC 1971, 35-13-4-2, Ind. Ann. Stat. § 10-3405 (Burns Supp. 1974).

rights upon arrival at the police station in the presence of his parents. Officers Musik and Muniz also testified that Moreno was again advised of his rights when he indicated that he wanted to make a statement. At this time, after Moreno was advised of his Miranda rights a second time, Moreno was given a waiver of rights form which he read and signed prior to confessing.

*Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 requires the exclusion of confessions elicited during custodial interrogation unless certain warnings are given and a knowing, voluntary and intelligent waiver of the suspect's privilege against self-incrimination is obtained. In the instant case, prior to trial, the trial court determined that Moreno's confession was voluntarily given pursuant to IC 1971, 35-5-5-1, (Burns Code Ed.).

It is true that it is error for the trial court to admit into evidence a confession made by a suspect to an interrogating police officer when the interrogating officer fails to warn the suspect of his constitutional rights in compliance with *Miranda* v. *Arizona, supra; Goodloe* v. *State* (1969), 253 Ind. 270, 252 N.E.2d 788. However, when the evidence in the record of the suppression hearing is conflicting as to whether the suspect was informed of his constitutional rights prior to giving his statement, this Court will not weigh the evidence nor judge the credibility of the witnesses. *Bridges* v. *State* (1970), 255 Ind. 201, 263 N.E.2d 368; *Smith* v. *State* (1969), 252 Ind. 425, 249 N.E.2d 493; *Matthews* v. *State* (1959), 239 Ind. 252, 156 N.E.2d 387; *Hutts* v. *State* (1973), 157 Ind. App. 83, 298 N.E.2d 487. As this Court recently stated in *State* v. *Cooley* (1974), 162 Ind. App. 482, 319 N.E.2d 868, 870:

"... the State has the burden to establish the voluntariness of the disputed confession by a preponderance of the evidence. Ramirez v. State (1972), [153] Ind. App. [142], 286 N.E.2d 219; Lego v. Twomey (1972), 404 U.S. 477, 92 S.Ct.

619, 30 L.Ed.2d 618. On appeal, this Court will review the trial court's determination on the issue of voluntariness in the same manner that it scrutinizes any factual finding reached on a preponderance of the evidence. *See* Kolb v. State (1972), 258 Ind. 469, 282 N.E.2d 541.

"In reviewing the sufficiency of the evidence in support of the trial judge's voluntariness finding, this Court will not weigh the evidence nor resolve questions of credibility. We look only to that evidence which supports the trial court's determination. . . ."[2]

There was sufficient evidence presented at the motion to suppress hearing to support the trial court's determination that Moreno was advised of his Miranda rights prior to confessing to the police.

(2) Moreno further contends that his confession should have been suppressed under the rationale of *Lewis* v. *State* (1972), 259 Ind. 431, 288 N.E.2d 138. In *Lewis* v. *State, supra,* the Supreme Court of Indiana held that a juvenile's confession can not be used against him at a subsequent trial unless both he and his parents were informed of his right to an attorney and to remain silent. At the time Moreno gave his confession, he was eighteen years old. Moreno argues that even though he was not a child for purposes of juvenile court jurisdiction [IC 1971, 31-5-7-3 (Burns Code Ed.)], he was "under many legal restrictions and he should not be compelled to stand on the same footing as an adult when asked to waive important Fifth and Sixth Amendment rights. . . ."

The *per se* exclusion of confessions obtained in violation of *Lewis* v. *State, supra,* 259 Ind. at 436-7, 288 N.E.2d at 141, is applicable only to confessions of persons under eighteen years of age. In discussing the reasons for the Court's holding in *Lewis,* Justice DeBruler, writing for the majority, stated:

---

2. *But see Cowell* v. *State* (1975), 263 Ind. 344, 331 N.E.2d 21; *Rogers* v. *State* (1974), 262 Ind. 315, 315 N.E.2d 707 wherein the Supreme Court of Indiana reviewed the trial court's ruling on the admissibility of a confession for abuse of discretion.

". . . Whether or not an older juvenile can be held to an adult standard is a question which the police are forced to confront and answer in the heat of an investigation. Furthermore, they are forced to proceed without indication of what alternative procedures would be constitutionally acceptable. It is harmful to the system of criminal justice to require law enforcement authorities to second guess the courts in the area of constitutional rights. *Clearly defined procedures should be established in areas which lend themselves to such standards in order to assure both efficient police procedure and protection of the important constitutional rights of the accused. Age is one area which lends itself to clearly defined standards.*

"If the police are placed in a quandary when confronting a juvenile accused, the juvenile is perhaps in the most serious predicament of his short life. In most cases he is aware that he is in trouble. If not under formal arrest he is usually being questioned in a police-dominated atmosphere and finds himself in some instances cut off from anything familiar or comforting to him. Many times he faces his accusers alone and without benefit of either parent or counsel. *It is in these circumstances that children under eighteen* are required to decide whether they wish to give up the intricate, important and long established fifth and sixth amendment rights. *It indeed seems questionable whether any child falling under the legally defined age of a juvenile and confronted in such a setting can be said to be able to voluntarily, and willingly waive those most important rights.*" (our emphasis)

It is apparent from a reading of *Lewis, supra,* that the Court intended to dispel confusion regarding the valid waiver of rights by juveniles by limiting its opinion to children under 18. This is not to say that the trial court, when considering the voluntariness of a confession, should not take into consideration the educational level, mental condition and age of the accused. *Lewis* v. *State, supra.*

In this case, both interrogating police officers testified that Moreno was advised of his right to counsel and his right to remain silent in the presence of his parents. Although Moreno's mother testified at the suppression hearing that she was not advised of her son's rights,

Moreno is again asking this Court to judge the credibility of the witnesses. This we may not do. *State* v. *Cooley, supra.* There was sufficient evidence presented at the motion to suppress hearing to support the trial court's determination that Moreno voluntarily, knowingly and intelligently waived his privilege against self-incrimination.

(3) Moreno also contends that his confession should have been suppressed because it is the product of an illegal arrest. He argues (1) that the arresting officer did not have sufficient probable cause to make the arrest and (2) that the arresting officer was required to obtain an arrest warrant under the circumstances of this case.[3] We need not consider whether Moreno's arrest was illegal and whether his confession should have been excluded under the Fourth Amendment exclusionary rule [*Wong Sun* v. *United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441].[4] *Koonce* v. *State* (1975), 263 Ind. 5, 323 N.E.2d 219. It is clear under the facts of this case that even if the admission of Moreno's confession at trial were erroneous, it would have been harmless error.

Assuming that Moreno's arrest was illegal, we are dealing with a violation of Moreno's federal constitutional right to be free from an unreasonable seizure of his person, and we must apply the federal harmless error standard to determine if the admission of the assumedly tainted confession was harmless beyond a reasonable doubt. *Chapman* v. *California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Greer* v. *State* (1969), 252 Ind. 20, 245 N.E.2d 158; *Larimer* v. *State* (1975), 163 Ind. App. 673, 326 N.E.2d 277. In discussing the federal harmless error

---

3. *See Stuck* v. *State* (1970), 255 Ind. 350, 264 N.E.2d 611, *Throop* v. *State* (1970), 254 Ind. 342, 259 N.E.2d 875; *Johnson* v. *State* (1973), 157 Ind. App. 105, 299 N.E.2d 194.

4. For the effect the giving of Miranda warnings has on the application of the Fourth Amendment exclusionary rule, see the recent United States Supreme Court decision, *Brown* v. *Illinois* (1975), 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416.

standard, this Court in *Larimer* v. *State, supra,* 326 N.E.2d at 278-79 recently stated:

> "Some harmless error guidance can be gleaned from Chapman v. California, *supra,* 386 U.S. at 24, 87 S.Ct. at 828:
>
>> '. . . We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard. . . .'
>
> \* \* \* \*
>
> When applying the federal harmless error standard, we must weigh the evidence against Larimer [appellant]—absent his confession—and determine whether, beyond a reasonable doubt, an honest and fair-minded jury would have rendered a guilty verdict based solely on the remaining untainted evidence."

Subsequent to *Chapman, supra,* the United States Supreme Court has discussed the federal harmless error standard in terms of overwhelming evidence. *Brown* v. *United States* (1973), 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208; *Harrington* v. *California* (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed. 2d 284. See *Moss* v. *State* (1975), 165 Ind. App. 502, 333 N.E.2d 141. In *Harrington* v. *California, supra,* 395 U.S. at 254, 89 S.Ct. at 1728, 23 L.Ed.2d at 288, Mr. Justice Douglas, writing for the majority, stated:

> ". . . Our judgment must be based on our own reading of the record and *on what seems to us to have been the probable impact of the two confessions on the minds of an average jury. . . .*" (our emphasis)

In this case, we must consider both the probable probative impact of Moreno's confession on the jury as well as the amount and probative value of the other evidence in the record tending to sustain the finding of guilt.

During a drag race on Gerry Street in Gary, Indiana, six year old Michael Clark was struck and killed by one of the racing automobiles as he was crossing the street. The State produced at trial the following uncontradicted and unimpeached testimony implicating Moreno as the driver who struck and killed Michael Clark while drag-racing:

(1) Moreno's passenger during the "drag-race" in question testified that it was Moreno's car that struck Michael Clark.

(2) Thomas Reel, the driver of the car Moreno was "drag-racing" at the time of the incident, testified that he saw Moreno's car strike a boy.

(3) Moreno's girlfriend at the time of the incident testified that on the night in question, Moreno told her that he had struck a little boy while "drag-racing" with Thomas Reel.

All of the above testimony was presented in the State's case in chief prior to any testimony regarding Moreno's confession. The allegedly tainted confession could have had no affect on the jury's reception of this evidence. Several other witnesses for the State testified that they saw two cars racing down Gerry Street and saw one of the cars strike a boy although they could not identify the car or the driver. Moreno's evidence consisted of the testimony of John Clark, the deceased boy's father, and Julia Moreno, defendant's mother. John Clark's testimony was offered for impeachment purposes to establish that Clark had filed a wrongful death action against Moreno. Julia Moreno's testimony was offered to establish that her sons's confession was not voluntary. Even considering the powerful probative impact of a confession on the average jury, it is clear beyond a reasonable doubt that an honest and fair-minded jury would have rendered a guilty verdict based solely on the above evidence absent the allegedly tainted confession. Therefore, even if Moreno's confession were errone-

ously admitted at trial, its admission would have been harmless error beyond a reasonable doubt.

## II.

### *Right to Discharge*

Moreno contends that he is entitled to discharge under Indiana Rules of Procedure, Criminal Rule 4(C) because he was not brought to trial for more than one year ██ after the last act of delay chargeable to him. CR. 4(C) was amended in 1973 and 1974.[5] However, the following pre-amendment version of CR. 4(C) is applicable to this case:[6]

> "(C) *Defendant on recognizance.* No person shall be held by recognizance to answer an indictment or affidavit, without trial, for a period embracing more than one year continuously from the date on which a recognizance was first taken therein; but he shall be discharged except as provided by subdivision (A) of this rule.
> "(A) . . . except where a continuance was had on his motion, or the delay was caused by his act. . . ."

5. Indiana Rules of Procedure, Criminal Rule 4(C) now provides: "(C) *Defendant discharged.* No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; Provided, however, That in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Any defendant so held shall, on motion, be discharged."

6. In determining what version of CR. 4(C) is applicable, we must look to the date of the proceedings which started the one year period of limitation running. See *Shack* v. *State* (1972), 259 Ind. 450, 288 N.E. 2d 155. For the purposes of CR. 4(C) prior to the 1973 amendment, the time began to run from the date on which a recognizance was first taken. Subsequent to the effective date of the 1973 amendment, February 1, 1974, the time begins to run from the date of arrest or the date the criminal charge is filed, whichever is later. Since Moreno was neither released on his own recognizance, charged nor arrested after the effective date of the 1973 amendment, the pre-amendment version of CR. 4(C) is applicable to this case.

The sequence of events crucial to determination of this issue is as follows:

| | |
|---|---|
| May 16, 1970 | Moreno arrested without a warrant |
| May 19, 1970 | Moreno charged with involuntary manslaughter |
| June 5, 1970 | Trial set for June 16, 1972 [probably 1970]<br>[Series of trial settings and continuances at Moreno's request] |
| January 22, 1971 | Trial set for February 2, 1971 |
| February 1, 1971 | Moreno requests indefinite continuance |
| March 23, 1971 | Hearing on Moreno's certified deposition questions |
| May 5, 1971 | Moreno files motion to suppress his confession |
| May 21, 1971 | Trial set for June 2, 1971 |
| June 2, 1971 | Hearing on motion to suppress |
| March 3, 1972 | Trial set for March 27, 1972 |
| March 27, 1972 | Trial continued until May 15, 1972 by agreement of the parties |
| May 12, 1972 | Trial continued until June 26, 1972 at the request of the State |
| June 6, 1972 | Moreno files his motion for discharge |

On appeal, both Moreno and the State assume that the one year period under pre-amendment CR. 4(C) begins to run anew from the last day of delay chargeable to the defendant. This has been the rule under the pre-amendment version of CR. 4(A). *Summerlin* v. *State* (1971), 256 Ind. 652, 271 N.E.2d 411; *Holt* v. *State* (1974), 262 Ind. 334, 316 N.E.2d 362; *Johnson* v. *State* (1974), 262 Ind. 164, 313 N.E.2d 535. This was also the rule under Supreme Court Rule 1-4D(3), which is substantially identical to the version of CR. 4(C) under consideration in this case.[7]

---

7.   Supreme Court Rule 1-4D(3) read as follows:

"3. Defendant on Recognizance.—No person shall be held by recognizance to answer on indictment or affidavit, without trial, for a period embracing more than one [1] year continuously from the date

*State* v. *Grow* (1970), 255 Ind. 183, 263 N.E.2d 277. Although we find no cases directly holding that under the pre-amendment version of CR. 4(C) the one year period begins to run anew from the last day of delay chargeable to the defendant, on the authority of *State* v. *Grow, supra,* we so hold.[8]

We must now determine when the one year period of limitation began to run in this case. Moreno contends that the last delay chargeable to him is the resolution of his certified deposition questions on March 23, 1971. The State contends that Moreno is chargeable with delay caused by Moreno's motion to suppress hearing on June 2, 1971. Under CR. 4(C) and (A), it is clear that a defendant is chargeable with delay occasioned by his own request for a continuance. *Easton* v. *State* (1972), 258 Ind. 204, 280 N.E.2d 307; *Coffey* v. *State* (1973), 156 Ind. App. 363, 296 N.E.2d 663. On February 1, 1971, Moreno requested an indefinite continuance of the February 2, 1971 trial setting. Trial was not reset until May 21, 1971 for trial on June 2, 1971. Regardless of whether Moreno is chargeable with delay for certifying deposition questions[9] or for filing a motion to suppress,[10] it

on which a recognizance was first taken therein; but he shall be discharged except as provided by paragraph one (1) of this rule. ". . . except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last mentioned circumstances, the prosecuting attorney shall make such statement in a motion for continuance not later than ten [10] days prior to the date set for trial, or if such motion is filed less than ten [10] days prior to trial, the prosecuting attorney shall show additionally that the delay in filing the motion was not the fault of the prosecutor."

8. We would point out that under the 1973 amendment to CR. 4(F), the time limitation contained in CR. 4(C) no longer begins to run anew from the last day of delay chargeable to the defendant but is merely tolled by the period of delay caused by defendant's acts.

9. *See Griffith* v. *State* (1975), 163 Ind. App. 11, 321 N.E.2d 576.

10. There are no cases under IC 1971, 35-1-26-2; Ind. Ann. Stat. § 9-1402 (Burns Supp. 1974); IC 1971, 35-1-27-1; Ind. Ann. Stat. § 9-1403 (Burns Supp. 1974); Supreme Court Rule 1-4D (the predecessors of CR. 4) or under CR. 4 which have held that a motion to suppress is delay chargeable to the defendant. Although there is some language in *State ex rel. Banks* v. *Hamilton Superior Court* (1973), 261 Ind. 426, 304 N.E.2d 776; *Durrett* v. *State* (1966); 247 Ind. 692,

is clear that he is chargeable with the delay of trial until June 2, 1971. *See Holt* v. *State* (1974), 262 Ind. 334, 316 N.E.2d 362; *Ford* v. *State* (1975), 165 Ind. App. 303, 332 N.E.2d 221. Between the requested February 2, 1971 continuance and the date Moreno's trial was reset, May 21, 1971, Moreno in no way indicated to the trial court that he was now ready to go to trial. If the defendant requests an indefinite continuance and later becomes dissatisfied that his trial has not been reset, he must take some affirmative action to notify the court that he now desires to go to trial in order to reinstate the running of the time period.[11] Moreno was clearly chargeable with delay until June 2, 1971.

On June 2, 1971, the trial court heard evidence on Moreno's motion to suppress, but trial was not held. We are unable to ascertain from the order book entries made a part of the record before this Court why trial was not held on this date. The only evidence we have been able to find relating to the June 2, 1971 trial date is testimony of Moreno's counsel at the hearing on the petition for discharge. At this hearing, Moreno's counsel admitted that he agreed to having the motion to suppress set for hearing on June 2, 1971 prior to trial. However, he testified that he did not request a continuance from the June 2, 1971 trial date and that he was ready to go to trial. This testimony is un-

---

219 N.E.2d 814, *cert. denied* 386 U.S. 1024, 87 S.Ct. 1383, 18 L.Ed.2d 465 (1967); and *Caine* v. *State* (1975), 163 Ind. App. 381, 324 N.E.2d 525 pointing out that a motion to suppress had been filed, the decision in those cases affirming that defendant was not entitled to discharge did not rest on the filing of a motion to suppress as delay. We would point out that the mere filing of a motion to suppress does not of itself engender any delay in bringing the defendant to trial within the period of the rule. It is true, as Moreno points out in his brief, that a hearing on a motion to suppress may be held during trial, and when so held, there certainly is no delay chargeable to the defendant. In this case, we do not reach the question of whether defendant is chargeable with any delay when the suppression hearing is held prior to trial.

11. In this case we do not reach the more complex question of when the delay chargeable to a defendant terminates under the new CR. 4(F) when that defendant requests an indefinite continuance and subsequently takes some affirmative action to start the time running again.

contradicted, and we conclude that Moreno can not be charged with the continuance of the June 2, 1971 trial date.

Moreno's case was next set for trial on March 27, 1972, well within the one year period running from June 2, 1971. On March 24, 1972 Moreno's counsel agreed to a continuance of the March 27, 1972 trial setting until May 15, 1972. Moreno contends that he is not chargeable with this delay since he was ready to go to trial on March 27, 1972 and agreed to the continuance at the request of the State. Moreno is chargeable with the acts of his attorney. See *Epps* v. *State* (1963), 244 Ind. 515, 192 N.E.2d 459; *Collins* v. *State* (1975), 163 Ind. App. 72, 321 N.E.2d 868. Regardless of Moreno's counsel's motives for agreeing to the continuance, this is a delay chargeable to Moreno. *See Holt, Epps, Ford, supra.* Moreno, through his counsel, was under no compulsion to agree to the continuance of the March 27, 1972 trial setting. Had Moreno refused to agree, the State could have either proceeded to trial within the period of the rule or could have requested a continuance until a date beyond the one year limitation in anticipation that CR. 4(D) would be applicable, and the State would be entitled to an additional ninety days to obtain evidence. The defendant may not lure the State into an agreed continuance of his trial outside the period of the rule and then assert his right to discharge on the ground that since the agreed continuance was only for the benefit of the State, the delay cannot be charged to the defendant. Moreno was chargeable with delay until the agreed trial date of May 15, 1972. The only year period began to run anew from this date, and Moreno's motion for discharge on June 6, 1972 was clearly premature and properly overruled.

The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, J. and Garrard, J., concur.

NOTE.—Reported at 336 N.E.2d 675.