ROBERT DYER V. STATE OF INDIANA.

[No. 1-675A102. Filed March 4, 1976. Rehearing denied April 7, 1976. Transfer denied June 30, 1976.]

*Michael E. Hunt,* Monroe County Public Defender, *David Paul Allen,* Assistant Counsel, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant Robert Dyer (Dyer) and Ricky Lazzell were charged on October 9, 1974 in Monroe County, Indiana, by information in two counts with the offienses of first degree burglary[1] and automobile banditry.[2]

Both defendants pleaded not guilty on October 15, 1974 and filed their notice of alibi on November 7, 1974. On November 8, 1974 the State filed answer to the notice of alibi. The cause was tried to a jury which found each defendant guilty of both counts, after which the court timely entered its judgment against Dyer on Count 2 of the jury's verdict and sentenced him to the Indiana Department of Corrections for a period of not less than one year nor more than five years.

## FACTS OF THE CASE:

The evidence most favorable to the State of Indiana is that Nicky Hardy, age about 15½ years, accompanied Dyer and Ricky Lazzell to the Terry Spicer Auto Sales lot across the street from the Tom O'Daniel Ford dealership. The three left the Spicer lot in a green 1966 Ford driven by Ricky Lazzell and proceeded to a rural mobile home near Bloomington owned by Mr. and Mrs. Robert Rogers, where Dyer and Lazzell, after determining there was no one at home, entered the home and carried personal property therefrom and placed it in the trunk of the Lazzell car while Hardy sat and watched. Between 1:30 P.M. and 2:15 P.M. on October 8, 1974, the lady of the house and her daughter drove up and shortly thereafter Hardy ran and Dyer and Lazzell also ran out the back door of the mobile home as the daughter was calling the sheriff's office from inside.

---

1. IC 1971, 35-13-4-4 (Burns Code Ed.)
2. IC 1971, 35-12-2-1 (Burns Code Ed.)

## ALIBI:

The alibi placed defendants at the Terry Spicer car lot in Bloomington at 12:45 P.M. Nicky Hardy was with them. At 1:35 Robert Dyer and Nicky Hardy left the car lot and arrived at Dyer's home near Kirksville at 1:45. Hardy did not stop but Robert Dyer remained there until 2:00 P.M. at which time he left and drove to 1023 North Jackson in Bloomington, the home of his in-laws, arriving at 2:20 P.M. At 2:30 P.M. Ricky Lazzell left Terry Spicer's lot after having been there since about 12:45 P.M.

The State's answer to Notice of Alibi was that the State would prove the offense occurred between 1:30 P.M. and 2:15 P.M. on October 8, 1974; that the call reporting the crime to the Monroe County Police Department was received at 2:15 P.M. on October 8, 1974.

## ALIBI EVIDENCE:

Steve Dyer, brother of appellant Dyer, testified as an alibi witness that at about 1:20 on the day of the crime he was in the body shop of the Tom O'Daniel Ford dealership where he could look across at Spicer's lot and that he observed Robert Dyer leaving Spicer's auto lot in a green 1966 Ford with Nicky Hardy driving the same and Robert Dyer was a passenger; that at around 2:20 P.M. on the same afternoon he observed Ricky Lazzell still at Terry Spicer's auto lot.

## MISCONDUCT OF JUROR:

Appellant Dyer secured the affidavits of three jurors, together with an affidavit of the public defender which were filed with Dyer's motion to correct errors.

The affidavit of juror Gerald R. Smith was to the effect that on November 13, 1974, the second day of the trial, at lunch time he went to the O'Daniel Ford dealership out of curosity for the purpose of determining the actual distances involved and to confirm in his own mind that the alibi wit-

ness's testimony could be true. He further said "that while he was there he did observe the distance from the Tom O'Daniel ramp to Terry Spicer's auto lot and did observe that one could see from the ramp area in order to test the accuracy of his memory—based on prior knowledge and on testimony during the trial—as to the distances involved." He did not talk with anyone during this visit but he did during jury deliberations, prior to reaching of a verdict, mention his trip to the O'Daniel Ford dealership in regard to the testimony of Steve Dyer. A fellow juror raised a question of what could be seen from the O'Daniel ramp and he responded that the perception of Mr. Dyer from that ramp would have been possible but that a considerable distance was involved. He further stated the visit to O'Daniel Ford had no measurable effect on his decision to find the defendants guilty and was of the opinion that the verdict of the jury would have been the same had he never mentioned his visit to O'Daniel Ford.

Juror Marilyn Kay Etnier made her affidavit that after the cause had been submitted to the jury and before the jury had reached its verdict a male juror mentioned his visit to O'Daniel Ford during the lunch break in relation to the testimony of Steve Dyer and that discussion had no effect on her acquiescence in the verdict. Juror John B. Misheikis filed an identical affidavit.

David Paul Allen, a legal intern in the Public Defender's office acting as assistant counsel in the trial of this cause, made an affidavit that in the month of January, 1975, he contacted jurors in response to Ricky Lazzell's suspicion of a discussion between deputy prosecutors which took place outside the court room during a recess and which was thought to have been overheard by a juror. He determined there was no truth in that rumor but verified his statement that juror Gerald Ralph Smith had made the visit to O'Daniel Ford in regard to testimony of Steve Dyer; that neither he nor either of the defendants had any knowledge or suspicion of Mr. Smith's conduct prior to January.

## ISSUES PRESENTED FOR REVIEW:

Appellant Dyer charges that he was denied a fair trial by the jury's misconduct in that:

A. The defendant was denied his statutory right to object to a jury view of the scene where a material fact occurred;

B. The defendant was denied his constitutional right to confront and cross-examine all adverse witnesses.

## ISSUE 1.

Dyer contends that he was denied his statutory right to forbid a view by the jury pursuant to IC 1971, 35-1-37-3 (Burns Code Ed.) which provides:

"Inspection of place.—Whenever, in the opinion of the court and with the consent of all the parties, it is proper for the jury to have a view of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury are thus absent, no person, other than the officer and the person appointed to show them the place, shall speak to them on any subject connected with the trial."

Dyer's first contention is not well taken. Neither Dyer nor the State submitted a request to view the scene pursuant to the statute. No permission was granted by the court to the jurors to collectively view the scene central to the alibi. Juror Smith's actions were not a violation of said statute.

## ISSUE 2.

Dyer contends that he was denied his constitutional right to confront and cross examine all adverse witnesses. When the juror appeared before the jury and offered his personal information as to what could be seen or not seen from O'Daniel Ford Sales he in effect offered new and relevant testimony to the jury. Even though juror Smith's remarks to the jury corroborated the evidence of

witness Steve Dyer in that it established it was possible for Steve Dyer to have seen from the Ford Sales to where he testified he saw and observed appellant Dyer, Nicky Hardy and Ricky Lazzell, we are constrained to hold that juror Smith's remarks amounted to testimonial evidence given to the jury outside of the presence of the defendant and thus violated his constitutional right to confront and cross examine adverse witnesses.

However, not all constitutional error amounts to reversible error. In *Moreno* v. *State* (1975), 166 Ind. App. 441, 336 N.E.2d 675 this court discussed the harmless error doctrine. There we quoted from *Larimer* v. *State* (1975), 163 Ind. App. 673, 326 N.E.2d 277 at 278-79 as follows:

> " 'Some harmless error guidance can be gleaned from *Chapman* v. *California supra*, 386 U.S. at 24,, 87 S.Ct. at 828:
>
>> " ' ". . . We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard. . . ."
>
> * * *
>
> " 'When applying the federal harmless error standard, we must weigh the evidence against Larimer [appellant]—absent his confession—and *determine whether, beyond a reasonable doubt, an honest and fair-minded jury would have rendered a guilty verdict based solely on the remaining untainted evidence.' "* (Our emphasis.) 336 N.E.2d at 681.

Applying this standard to the case at bar we are of the opinion that the jury would have found Dyer guilty beyond a reasonable doubt based on all of the evidence other than Smith's statements.

We are further bolstered in this opinion by the statements of the jurors themselves. While their affidavits will not be considered to impeach their verdict they may properly be used to support the verdict. *Posey* v. *State* (1956), 234 Ind. 696, 701, 131 N.E.2d 145.

Here every indication points to the fact that the juror's statements did not contribute in any way to the jury's final determination of the defendant's guilt.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 342 N.E.2d 671.