**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 29 2014, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**DONALD C. SWANSON, JR.**
**ANDREW L. TEEL**
Haller & Colvin, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES M. BURTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1403-CR-98 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D05-1212-FA-48

**October 29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

On December 5, 2012, Appellee-Plaintiff the State of Indiana (the "State") charged Appellant-Defendant James Burton with two counts of Class A felony child molesting and two counts of Class C felony child molesting. The charges stemmed from incidents of sexual molestation involving the victim, M.V., which took place on unspecified dates over a two-year period, when M.V. was between six and eight years old.

During trial, Burton objected to hearsay testimony proffered by State's witness Michelle Ditton, a nurse who treated M.V., regarding statements made by M.V. during a medical examination. The trial court overruled the objection based on the 'medical diagnosis or treatment' exception to the hearsay rule. During Burton's cross-examination of M.V., Burton attempted to impeach M.V. using her deposition testimony. Following the cross-examination, the State moved for the admission of M.V.'s entire deposition under the doctrine of completeness. The trial court granted the motion over Burton's objection and a redacted version of the deposition was read to the jury.

On appeal, Burton challenges the trial court's evidentiary rulings on Ditton's testimony and the scope of the admission of M.V.'s deposition. Additionally, Burton argues that the State produced insufficient evidence based on the doctrine of incredible dubiosity. Concluding that (1) the trial court acted within its discretion in admitting the challenged evidence, and (2) the evidence offered by the State was sufficient to support the jury's verdict, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment of the trial court are as follows: On June 18, 2009, James Burton and his wife, Theresa Burton, became foster parents to a group of four siblings: six-year-old M.V., four-year-old My.V., nine-year-old Mo.V., and eleven-year-old Mi.V. (Tr. 497-98) Mi.V. stayed with the Burtons for approximately two weeks before leaving for another foster home. (Tr. 252, 219) Mo.V. stayed with the Burtons until November 2010, before returning to live with her biological father. (Tr. 252) The Burtons also had two biological sons, B.B. and C.B., and another foster child, R.U., ages twenty one, nineteen and seventeen years old, respectively. (Tr. 249-253, 497)

While M.V. was living with the Burtons, Theresa was primarily responsible for taking care of the children. (Tr. 510) On rare occasions, Burton would be home alone with M.V. and My.V. (Tr. 255, 537-38, 189-90, 238) M.V. testified that on one such occasion, Burton requested that M.V. come into his bedroom downstairs and then told her to remove her pants and underwear and sit on the bed. (Tr. 70, 72, 481) Burton then touched M.V.'s chest, buttocks, and vagina and licked M.V.'s vagina. (Tr. 68-71, 452) On another occasion, after Theresa had gone to the grocery store, Burton told M.V. to come over to him in the living room. (Tr. 431-435) Burton then rubbed M.V.'s vagina for approximately three minutes. (Tr. 437) On more than one occasion, Burton had M.V. touch his penis with her hand and mouth. (Tr. 76-77, 475-76)

On January 31, 2012, M.V. left a note for her elementary school teacher, Tiffany Flynn, asking to speak to her after class. (Tr. 289; Ex. 2) Flynn had previously worked out a

3

system with M.V. whereby M.V. would leave Flynn notes when she was feeling upset. (Tr. 288) After approaching M.V. about the note, M.V. disclosed the allegations to Flynn, who then immediately reported the allegations to the school's caseworker. (Tr. 294) The caseworker then reported the allegations to Child Protective Services. (Tr. 318)

That same day, M.V. was interviewed at the Bill Lewis Center for Children by Julie DeJesus, a forensic interviewer. (Tr. 324, 327) The interview was witnessed by Robin Pfeiffer, a Detective with the City of Fort Wayne Police Department. (Tr. 348, 356) During the interview, M.V. made physical descriptions of the incidents with Burton, including pulling her legs up to her chest and spreading them, sticking out her tongue, and the manner in which Burton exposed and rubbed her vagina. (Tr. 356-358) Pfeiffer testified that M.V. "had specific sexual knowledge that was beyond her maturity level" and that "she would not know unless her disclosure was real." Tr. p. 374. M.V. was eight and one-half years old at the time of the interview. (Tr. 171)

Later that day, M.V. went to the Fort Wayne Sexual Assault Treatment Center and was examined by Michelle Ditton, the chief nursing officer. (Tr. 152, 158-59) Prior to the examination, Ditton approached M.V. in the lobby wearing scrubs, crocs, and a name tag that said "forensic nurse." Tr. p. 159. Ditton then explained to M.V. that she was a nurse and that she would be giving M.V. a check-up. (Tr. 159) After Ditton took M.V. into the exam room, M.V. told Ditton of two separate events in which Burton had licked her "private" and when she had licked Burton's "private." Tr. p. 163. M.V. also stated that, on another occasion, Burton rubbed her "private" while the two were in his car. Tr. p. 164. M.V. demonstrated

4

this act to Ditton by making a rubbing motion with the palm of her hand. (Tr. 167)

On December 5, 2012, the State charged Burton with two counts of Class A felony child molesting and two counts of Class C felony child molesting. (Appellant's App. 13-17) During trial, the State elicited testimony from Ditton regarding M.V.'s statements during the examination. (Tr. 163-170) Burton's objection to that testimony was overruled by the trial court. (Tr. 163)

While cross-examining M.V., Burton attempted to impeach M.V. using her deposition testimony. (Tr. 101-109) After several objections by the State regarding the manner of impeachment, the trial court stated, "[t]his is not proper impeachment and I am stopping it," and later explained to Burton that "[y]our question [in the deposition] is not the evidence, it's her answer … [t]he answer is what comes in, not the question." (Tr. 101-102, 104, 110). Tr. pp. 109, 118. Burton continued to impeach M.V. using the deposition and the State objected again, arguing that Burton was improperly using the deposition by "taking bits and pieces out of context" and "asking one question and [] using the answer in the positive for another question." Tr. pp. 113, 120. The trial court sustained the objection and explained to Burton, "We're done with the deposition. It – I've asked you repeatedly to use it in the proper fashion and you're not doing it properly. You know how to do it. I don't understand why we keep going down this route." Tr. p. 119.

Following Burton's cross-examination of M.V., the State moved to have M.V.'s deposition read to the jury in order to give the jury context to the portions of the deposition which were used during cross-examination. (Tr. 131) Despite Burton's objections, the trial

5

court granted the motion and a redacted version of the deposition was then read to the jury. (Tr. 145, 424-484)

On February 13, 2014, the jury found Burton guilty of two counts of Class A felony child molesting and not guilty of Class C felony two counts of child molesting. (Appellant's App. 8) On March 14, 2014, The trial court sentenced Burton to an aggregate forty-year term of imprisonment. (Appellant's App. 10)

## DISCUSSION AND DECISION

### I. Admission of Evidence

Burton contends that the trial court abused its discretion in admitting certain evidence at trial. "'The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and we will reverse only upon an abuse of that discretion.'" *Collins v. State*, 835 N.E.2d 1010, 1016 (Ind. Ct. App. 2005) (quoting *Greenboam v. State*, 766 N.E.2d 1247, 1250 (Ind. Ct. App. 2002), *trans. denied*). "'An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.'" *Id*. (quoting *Greenboam*, 766 N.E.2d at 1250).

### A. Statements Made for Medical Diagnosis or Treatment

Burton claims that the trial court abused its discretion by admitting hearsay statements made by M.V. under the 'medical diagnosis or treatment' exception. During trial, Ditton gave testimony regarding her examination of M.V., including specific statements made by M.V. therein. (Tr. 163-170) The trial court allowed this testimony over objection by Burton

that the testimony was hearsay. (Tr. 163) Indiana Evidence Rule 803(4) provides that certain statements made for medical diagnosis or treatment are not excluded by the rule against hearsay. Hearsay statements which are admissible under Rule 803(4) include any statement that

>    (A) is made by a person seeking medical diagnosis or treatment;
>    (B) is made for — and is reasonably pertinent to — medical diagnosis or treatment; and
>    (C) describes medical history; past or present symptoms, pain or sensations; their inception; or their general cause.

Evid. R. 803(4). This hearsay exception is "based upon the belief that a declarant's self-interest in seeking medical treatment renders it unlikely that the declarant would mislead the medical personnel person she wants to treat her." *Palilonis v. State*, 970 N.E.2d 713, 726 (Ind. Ct. App. 2012) (citing *Miles v. State*, 777 N.E.2d 767, 771 (Ind. Ct. App. 2002)). A two-step analysis exists for the purpose of determining whether such a statement is properly admitted: "(1) whether the declarant is motivated to provide truthful information in order to promote diagnosis and treatment; and (2) whether the content of the statement is such that an expert in the field would reasonably rely upon it in rendering diagnosis or treatment." *Id.* (citing *Nash v. State*, 754 N.E.2d 1021, 1023-24 (Ind. Ct. App. 2001) *trans. denied*). "Statements made by victims of sexual assault or molestation about the nature of the assault or abuse—even those identifying the perpetrator—generally satisfy the second prong of the analysis…." *VanPatten v. State*, 986 N.E.2d 255, 260 (Ind. 2013). Burton argues only that the first prong of this analysis has not been met. (Appellant's Br. 12).

7

In regards to the first prong, a declarant's motivation to seek treatment and provide truthful information may be inferred from the circumstances. *Id*. at 261 (citing *McClain v. State*, 675 N.E.2d 329, 331 (Ind. 1996)). However, the inference may be less apparent when the declarant is a child because children may not understand the importance of giving truthful responses in order to assure accurate medical diagnosis and treatment. *Id*. In such circumstances, "there must be evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information." *Id*. (citing *McClain*, 675 N.E.2d at 331). "This evidence does not necessarily require testimony from the child-declarant; it may be received in the form of foundational testimony from the medical professional detailing the interaction between him or her and the declarant, how he or she explained his role to the declarant, and an affirmation that the declarant understood that role." *Id*. (citing *U.S. v. Barrett*, 8 F.3d 1296, 1300 (8th Cir. 1993)).

In *Cooper v. State*, 714 N.E.2d 689 (Ind. Ct. App. 1999), *trans. denied*, a registered nurse provided hearsay testimony in the form of statements made to her by a child victim of sexual molestation during the course of a physical examination. *Id*. at 690. This court affirmed the admission of the testimony, and highlighted a few critical items of that testimony which were significant to the analysis. *Id*. at 691. With respect to the nurse's standard procedure, she testified that "we introduce ourselves to the child ... I usually tell them my name is Kim and I'll be their nurse and I'll be with them the whole time ... [l]et them know what they are going to expect, what the doctor is going to do, and that it's okay for the doctor and nurse to take a look at them." *Id*. The nurse also stated, "I asked her if she

8

knew why she was there in the emergency room, and I believe she thought she was going to get an exam. She needed to get examined, but she didn't know why." *Id.* at 694.

Ultimately, the court in *Cooper* held that the testimony provided a proper foundation for the admission of the nurse's testimony under Rule 803(4). The victim "knew that she was in the emergency room for an examination by a physician because of the molestation by Cooper. [She] sufficiently understood the professional role of both the nurse and the doctor who examined her, thus triggering the motivation to provide truthful information." *Id.* at 694.

In the instant case, the State provided foundational and direct testimony to satisfy the first prong of the Rule 803(4) analysis. Ditton testified as to the circumstances surrounding the examination which suggested that M.V. understood she was receiving medical treatment. (Tr. 159-161) Specifically, Ditton described the treatment center and examination rooms as "identical to any doctor's office;" Ditton approached M.V. in the waiting room wearing scrubs, crocks, and a name tag that said "forensic nurse;" and Ditton explained her role to M.V.:

> I said that my name is Michelle and that I was a nurse, and just like when she goes to the doctor that I was gonna make sure she was okay, and that I would be looking her over from head to toe. And that age group is very worried about shots, so we assure them that there won't be any shots.

Tr. pp. 158-59. Ditton also stated that M.V. appeared to understand what she was saying. (Tr. 159) In addition to Ditton's foundational testimony, M.V. testified as to her understanding of the significance of medical examinations and the importance of being truthful with the doctor or nurse:

> Q: Why do you go to the doctor?

A: To get a check-up.

Q: To get a check-up, okay. So what's really important about getting a check-up at the doctors?

A: I don't know

Q: You don't know? Do you have to tell them how you feel?

A: Yes.

Q: Okay. Is it important to tell them the truth about what's wrong or what happened?

A: Yes.

Q:--so they can help you?

A: Yes.

Q: Okay. And you don't tell them not-true things, you tell them true things; right?

A: Yes.

Q: Okay. Do doctors and nurses help you if something's wrong with you or something happened to you?

A: Yes.

Tr. pp. 97-98.

Ditton's foundational testimony alone would be sufficient to support the trial court's decision to admit the testimony. Taken with the testimony of M.V., we have little trouble concluding that the trial court did not abuse its discretion to admit M.V.'s out-of-court statements to Ditton.

### B. Doctrine of Completeness

Pursuant to Indiana Evidence Rule 106, otherwise known as the doctrine of completeness, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." "This rule prevents one party from misleading the jury by presenting evidence out of context." *Evans v. State*, 643 N.E.2d 877, 881 (Ind. 1994) (citing *McElroy v. State*, 553

N.E.2d 835 (Ind. 1990)). "The remainder of the statement or document is subject to the general rules of admissibility, however, and any portions found immaterial, irrelevant, or prejudicial must be redacted." *Id.* (citing *Saperito v. State*, 490 N.E.2d 274 (Ind. 1986)).

Following Burton's cross-examination of M.V., the State moved to admit M.V.'s entire deposition pursuant to Indiana Evidence Rule 106. (Tr. 131) The State argued that the jury was misled by the improper impeachment of M.V. and, as a result, the doctrine of completeness required that the jury hear the entire deposition to provide a "full picture" of what they had heard. Tr. p. 131. After reviewing the deposition, the trial court granted the State's motion the following day, allowing a redacted version of the deposition to be read to the jury. (Tr. 145) The trial court explained its ruling, stating:

> [A]t the end of the day yesterday, not having the benefit of the entire deposition, this jury has now been left with the impression that this is a prior inconsistent statement when in fact there is much in this statement that was consistent with her trial testimony … I'll grant the State's motion that part of this document be introduced as evidence to this jury under the doctrine of completeness.

Tr. p. 145. The trial court later reiterated its decision, saying "the jury has an impression that this is an inconsistent statement and it's not," Tr. p. 413.

"Once a party attacks the credibility of a witness on the grounds of prior inconsistent statements, the door is open for the opposing party to introduce the prior statements 'in order that the jury might weigh [the] accusation of inconsistency and the degree thereof.'" *Evans*, 643 N.E.2d at 882 (citing *Mayhew v. State*, 537 N.E.2d 1188, 1191 (Ind. 1989)). More so, as in *Evans*, this is "especially true, where, as in this case, the alleged inconsistencies go to

11

details, and *most of the statements are otherwise substantially similar.*" *Id.* (citing *U.S. v. Harris*, 761 F.2d 394 (7th Cir. 1985)) (emphasis added). As the trial court twice mentioned, M.V.'s trial testimony was substantially similar to her deposition, and contained few, if any, discernable inconsistencies.[1]

Burton argues that the scope of the deposition read to the jury exceeded the amount necessary to satisfy the doctrine of completeness. (Appellant's Br. 17) Specifically, Burton contends that "at no point did he ever use the deposition to impeach [M.V.]'s testimony that the abuse occurred," and therefore, no portions of M.V.'s deposition describing the actual abuse should have been read to the jury. (Appellant's Br. 18) However, during his impeachment of M.V., Burton specifically refers to a deposition question in which he asked M.V., "did [Burton] actually touch you in a bad area?" Tr. p. 102. He also questioned M.V. about several details surrounding the incidents, including who was at home at the time of the molestations, what areas of the house the molestations occurred, what she and Burton were wearing at the time of each incident, what Burton's penis looked like, and the timeframe in which the incidents began and ended. (Tr. 101-109, 111, 121-22). Additionally, as was argued by the State during trial, the amount of misleading impeachment was so severe that admitting the entire deposition, albeit redacted, was necessary to prevent a "line by line" correction of the misimpressions that had been created. (Tr. 130-31)

---

[1] No portion of the deposition was admitted as an exhibit, nor is it in the record on appeal. The deposition, as read in trial, is not paginated independently. Therefore, when Burton refers to page numbers of the deposition during his attempted impeachment, there is no means for this court to determine the sections of the deposition to which he is referring. The trial court, however, heard the in-court testimony, then referred to the deposition and found M.V.'s testimony to be consistent.

Regardless, even assuming error had occurred, it was harmless. "Errors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *VanPatten*, 986 N.E.2d at 267 (citing *McClain*, 675 N.E.2d at 331; Ind. Trial Rule 61). "Admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted." *Id.* (citing *McClain*, 675 N.E.2d at 331-32). M.V. recalled a few more details of the incidents during the deposition, specifically what clothes her sister and Burton were wearing at the time, as well as the exact day of the last incident. Still, M.V.'s deposition testimony was otherwise consistent with, and cumulative of, her trial testimony regarding the specific sexual acts which comprised each incident. Additionally, the deposition testimony provided the same demonstrative information, in which M.V. physically described the incidents, which had already been elicited during the trial testimony of Ditton and Detective Pfieffer. Accordingly, the trial court's ruling admitting the deposition is affirmed.

## II. Sufficiency of Evidence

Burton also contends that the State did not introduce sufficient evidence to support the convictions. In reviewing a challenge to the sufficiency of evidence, this court does not reweigh evidence or re-assess the credibility of witnesses, and considers conflicting evidence in a light most favorable to the trial court's decision. *Cole v. State*, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007); *Vitek v. State*, 750 N.E.2d 346, 352 (Ind. 2001). It is the fact-finder's responsibility to determine whether the evidence is sufficient. *Wright v. State*, 750 N.E.2d 346, 352 (Ind. 2001). "Evidence is insufficient to convict when no rational fact-finder could

13

have found the defendant guilty beyond a reasonable doubt." *Matthews v. State*, 718 N.E.2d 807, 810-11 (Ind. Ct. App. 1999) (citing *Cuto v. State*, 709 N.E.2d 356, 362 (Ind. Ct. App. 1999)).

In order to prove that Burton committed the charged acts, the State was required to prove that Burton, who was at least twenty-one years of age, performed or submitted to sexual intercourse or deviate sexual conduct with M.V., who was less than fourteen years old. Ind. Code § 35-42-4-3(a)(1). "Deviate sexual conduct" is defined as an act involving a sex organ of one person and the mouth of another person. Ind. Code § 35-31.5-2-94(1). M.V. testified that, on multiple occasions, Burton licked M.V.'s vagina and had her touch his penis with her mouth. Although M.V. was the only witness to the molestations, our court has held that testimony from the victim alone is sufficient to sustain a conviction. *Warren v. State*, 701 N.E.2d 902, 906 (Ind. Ct. App. 1998). "Furthermore, a conviction may stand on the uncorroborated evidence of a minor witness." *Id.* (citing *Nelson v. State*, 525 N.E.2d 296, 297 (Ind. 1988). Accordingly, this evidence is sufficient to sustain the jury's finding of guilt.

However, Burton implores the court to apply the doctrine of incredible dubiosity, a narrow exception to the rule which allows this court to reweigh certain evidence. (Appellant's Br. 21)

> When confronted with testimony that is inherently improbable or coerced, equivocal, wholly uncorroborated or of incredible dubiosity, we may make an exception and reweigh the credibility of a witness. *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994). We have limited this exception, however, to cases where a sole witness presents inherently contradictory testimony that is equivocal or the result of coercion, and there is a complete lack of

14

circumstantial evidence of guilt. *White v. State*, 706 N.E.2d 1078, 1079-80 (Ind. 1999).

*Bowles v. State*, 737 N.E.2d 1150, 1152 (Ind. 2000)

Burton's attempt to apply this doctrine is misplaced. For the doctrine to apply, "the court must find that the testimony 'runs counter to human experience' and that 'no reasonable person could believe' it." *Edwards v. State*, 753 N.E.2d 618, 623 (Ind. 2001) (quoting *Campbell v. State*, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000)). Unfortunately, cases involving the abuse of a disadvantaged youth are all too common and, upon review, we cannot say that M.V.'s testimony regarding the sexual abuse inflicted by Burton runs counter to human experience. As such, this court is in no position to reweigh the evidence and will not do so here.

The judgment of the trial court is affirmed.

BARNES, J., and BROWN, J., concur.