**Robert W. GREENBOAM,**
**Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 46A03–0103–CR–79.

Court of Appeals of Indiana.

April 30, 2002.

Peter L. Boyles, Martz & Boyles, Valparaiso, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Robert W. Greenboam appeals his convictions for four counts of child molesting as class A felonies.[1] Greenboam raises three issues, which we restate as:

1. Whether the trial court abused its discretion by admitting testimony regarding Greenboam's prior molestation of the current victim and another child;

2. Whether the evidence is sufficient to sustain his convictions for child molesting; and

3. Whether the sentence imposed by the trial court was manifestly unreasonable.

We reverse and remand.

The facts most favorable to the convictions follow. On December 8, 1998, Greenboam was charged with four counts of child molesting as class A felonies and six counts of child molesting as class C felonies[2] for the molestation of his thirteen-year-old daughter, C.G. The charges relate to incidents of molestations that occurred between August 1997 and November 1998

---

1. Ind.Code § 35–42–4–3(a).

2. Ind.Code § 35–42–4–3(b).

at the family's residence or in the cab of Greenboam's semi-truck which was parked outside the family's residence.

On one occasion, Greenboam woke C.G., grabbed her by the arm, and dragged her to the bathroom. Greenboam told C.G. to lick her hand and then forced C.G. to touch his penis. Greenboam also forced C.G. to place her mouth on his penis, and he ejaculated in her mouth. C.G. then vomited on him. Greenboam told C.G. not to tell anyone about the incident.

On another occasion, Greenboam woke C.G. and took her downstairs to the hallway near the bathroom. Greenboam told C.G. to lick her hand and forced her to touch his penis. Greenboam also touched C.G.'s chest during the incident. After Greenboam ejaculated, he made C.G. get down on her hands and knees. He then "put his penis in [her] butt" and moved "back and forth." Transcript at 430–431. C.G. said that it hurt and she cried. Greenboam threatened to kill C.G. during this incident.

On a third occasion, Greenboam woke C.G. and told her to go outside to the cab of his semi-truck. In the truck, Greenboam instructed C.G. to remove her clothing. Greenboam removed his clothing, made C.G. lick her hand, and made C.G. touch his penis. During this incident, Greenboam touched C.G.'s chest and inserted his finger into her vagina. Greenboam warned C.G. not to tell or she would go to foster care. He also told C.G. that she looked like her mother and that C.G. should not cry because "it should feel good."

On a fourth occasion, C.G. again went outside to the cab of the semi-truck. Greenboam entered the truck and removed his clothing. He told C.G. to remove her clothing, lick her hand, and touch his penis. Greenboam also made C.G. put her mouth on his penis. On a fifth occasion,

while the family was seated at the dinner table, Greenboam touched C.G.'s chest and crotch through her clothing.

When questioned by Captain George Ritter of the LaPorte County Sheriff's Department in November 1998, Greenboam stated that "he did not touch [C.G.]'s breasts or crotch since the last time he did it in the past." Transcript at 399. Greenboam was evidently referring to two counts of child molesting as class C felonies to which he had pleaded guilty in August 1996 for molesting C.G. and his step-daughter, S.H.

On November 2, 2000, a jury found Greenboam guilty of four counts of child molesting as class A felonies and six counts of child molesting as class C felonies. The trial court merged the class C felony convictions with the class A felony convictions. The trial court then sentenced Greenboam to fifty years in the Department of Correction for each count of child molesting as a class A felony. The trial court ordered the four sentences to be served consecutively. Thus, Greenboam was sentenced to an aggregate 200 year sentence.

I.

The first issue is whether the trial court abused its discretion by admitting testimony regarding Greenboam's prior molestations of C.G. and S.H. The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and we will reverse only upon an abuse of that discretion. *Sundling v. State*, 679 N.E.2d 988, 992 (Ind.Ct.App. 1997), *reh'g denied*. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Smith v. State*, 754 N.E.2d 502, 504 (Ind.2001).

We must first address the State's argument that Greenboam waived any objection to the testimony regarding his prior bad acts by failing to object contemporaneously when the evidence was presented at trial. On appeal, a party may not assert that the trial court erred by overruling a motion seeking the exclusion of evidence unless the party objected to the evidence at the time it was offered. *Sisk v. State,* 736 N.E.2d 250, 251 (Ind. 2000). However, we have approved the use of continuing objections where "the record demonstrates that the continuing objection fully and clearly advised the trial court of the specific grounds for the objection." *Sullivan v. State,* 748 N.E.2d 861, 864 (Ind.Ct.App.2001).

In this case, Greenboam filed a motion in limine seeking to exclude any evidence of prior molestations by Greenboam. After jury selection but prior to opening statements by counsel, the trial court heard argument on the issue. The trial court permitted the testimony under Ind. Evidence Rule 404(b) to show Greenboam's common plan or scheme to molest C.G.

Evidence of Greenboam's prior molestations of C.G. and S.H. was presented through the testimony of Captain Ritter, C.G., and S.H. Greenboam did not object at the time Captain Ritter testified regarding Greenboam's prior molestation of C.G. However, before Captain Ritter's challenged testimony, the following colloquy occurred regarding the prior molestations:

Court: For the record, the language that [prosecutor] prepared, [defense counsel] cleared it with his client and [defense counsel] just said that it was okay, but that is in no way waiving any of his objections that he made to this at the very beginning, right?

Defense Counsel: That's correct, those objections stand by giving your ruling, then the language as, as proposed the alterations in the language would be acceptable given your ruling.

The Court: Right, not waiving any of the objections—

Defense Counsel: Exactly.

The Court:—he had previously raised.

Transcript at 389–390. Although certainly not a model of clarity, this discussion was sufficient to advise the trial court of Greenboam's continuing objections. *See, e.g., Sullivan,* 748 N.E.2d at 864.

Greenboam also did not object to C.G.'s testimony of the prior molestation. However, prior to C.G.'s testimony, while discussing the trial court's limiting instruction regarding Greenboam's prior molestations, the following comments were made:

Defense Counsel: So my objection still stands it [is] not a waiver.

The Court: Of course not, we'll show you're making a continuing objection to that entire line of testimony, and that the Court is overruling the objection for the record.

Transcript at 411. Greenboam's objection was sufficient to preserve the issue for our review. *See, e.g., Sundling,* 679 N.E.2d at 992 n. 3 (holding that defendant's objections were sufficient to preserve the issue for appellate consideration where defendant objected to the testimony of each witness at issue and the trial court overruled each objection and noted a continuing objection in each instance).

Similarly, immediately before the State's cross-examination of S.H., the trial court heard lengthy argument on the admission of Greenboam's prior molestation of S.H. and C.G. Although Greenboam did not object during the cross-examination of S.H., the lengthy argument prior to the State's cross-examination sufficiently apprised the trial court of Greenboam's objection and preserved the issue for our review. *See,*

*e.g., Martin v. State,* 622 N.E.2d 185, 187 (Ind.1993) (holding that error was preserved for purposes of review where on two separate occasions during the trial before the evidence was admitted, the defendant brought the issue to the trial court's attention and the trial court informed him that the error was preserved), *reh'g denied.*

Because Greenboam preserved his objection to the evidence of his prior molestations, we must address whether the evidence is admissible under Ind. Evidence Rule 404(b). Ind. Evidence Rule 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The rule is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities." *Hicks v. State,* 690 N.E.2d 215, 218 (Ind. 1997). In determining whether to admit evidence under Ind. Evidence Rule 404(b), the trial court must: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Ind. Evidence Rule 403.[3] *Id.* at 221.

In 1996, Greenboam pleaded guilty to one count of child molesting as a class C felony for the molestation of C.G. and one count of child molesting as a class C felony for the molestation of S.H. After the current charges were filed, the State filed a notice of intention to use the evidence of Greenboam's prior molestation of C.G. under Ind. Evidence Rule 404(b). Greenboam filed a motion in limine seeking to exclude the evidence. The trial court permitted the testimony as evidence of a common plan or scheme "to victimize this particular person to gratify [Greenboam's] sexual desires with this particular person." However, the trial court ruled that evidence of Greenboam's prior arrest and conviction was inadmissible.

Evidence of Greenboam's prior molestations was first permitted during the testimony of Captain Ritter. Captain Ritter testified regarding his interview with Greenboam in which Greenboam "advised that he did not touch [C.G.'s] breasts or crotch since the last time he did it in the past." Transcript at 399.

Next, C.G. was permitted to testify as follows:

Q. Now, [C.G.], there has been some previous testimony early on that [Greenboam] touched your breasts and crotch area in the past, not having to do with these allegations, did that in fact occur?

A. Yes.

Q. And where in fact did that happen?

A. In the house.

---

**3.** Ind. Evidence Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

\* \* \* \* \*

Q. And, and [sic] what exactly did he do to you on that previous occasion?

A. He had touched my breast and my crotch and made me touch him.

Transcript at 420–421.

S.H. was then permitted to testify on the State's cross-examination regarding the previous molestation as follows:

Q. [S.H.,] has [Greenboam] ever touched you inappropriately prior to the 1998 time period that you've just testified to?

A. Yes.

Q. Could you tell me when, if you know?

A. I'm not quite sure when.

Q. Okay, if I were to try and, if I were to say 1995 would you believe that to be correct or incorrect?

A. Correct.

Q. You were about how old in 1995?

A. About eight years old.

\* \* \* \* \*

Q. Okay, could you please tell me what happened with you and [Greenboam] in 1995?

A. We had to go in his room and undress and he would touch us and we'd have to touch him in private places.

Q. Okay, you say he would touch "us" meaning you?

A. Yes.

Q. Okay, when you use the term "us" did you mean—what did you mean by that term?

A. [C.G.], too.

Q. Okay, where would [Greenboam] touch you?

A. In the crotch part. In the crotch.

Q. In the crotch? Where would you touch [Greenboam]?

A. His penis.

Q. Were you required to do anything to his penis?

A. Yes.

Q. What?

A. Rub our hands up and down it.

Transcript at 551–553. The trial court instructed the jury that the evidence of Greenboam's prior molestations was offered for the purpose of proving a common plan or scheme and could be considered for only that purpose.

Prior to the promulgation of the Indiana Rules of Evidence, our supreme court adopted Fed. Evidence Rule 404(b) in *Lannan v. State*, 600 N.E.2d 1334, 1339 (Ind.1992). Although the "common plan or scheme" exception was discussed in *Lannan*, the exception was revisited in *Lay v. State*, 659 N.E.2d 1005 (Ind.1995), *reh'g denied*, where Chief Justice Shepard dissented and noted that:

Today's decision represents one of those rare moments when the lead opinion announces the result but the concurrence and the dissent announce the applicable rule of law. A majority affirms the conviction and a different majority declares that "common scheme or plan" has not survived adoption of the Indiana Rules of Evidence.

\* \* \* \* \*

Our adoption of Federal Rule of Evidence 404(b) in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, and our subsequent promulgation of Indiana Rule of Evidence 404(b), do not represent a mere continuation of that common law caselaw. Instead of the old "common scheme or plan" rule, our law now admits evidence of "plan" alone. It is a narrower exception than our old rule,

which tended to degenerate into an all-purpose excuse for admitting pretty much any old prior misconduct.

*Id.* at 1015 (Shepard, C.J., dissenting); *see also Spires v. State,* 670 N.E.2d 1313, 1315 (Ind.Ct.App.1996). Thus, we must determine whether Greenboam's prior conduct was admissible to show his "plan" rather than his "common plan or scheme."

Greenboam argues that the evidence "was directed solely toward proving Greenboam's propensity to commit the charged crime." Appellant's Brief at 23. The State argues that the character, time, and place of the offenses were so related as to establish Greenboam's plan to molest C.G. The State further argues that all of the offenses occurred at the family's home and the "similarity of the offenses established [Greenboam's] plan to repeatedly molest his daughter." Appellee's Brief at 11. We disagree.

The prosecution in this case presented no evidence that Greenboam's molestation of C.G. was part of a preconceived plan. The prosecution did not establish any similarity between the current molestations and the prior molestations except that Greenboam molested C.G. in the family's home. Such a broad interpretation of the plan exception is clearly not contemplated by Ind. Evidence Rule 404(b).

Our supreme court has emphasized that the plan exception is "a narrower exception" than the "common scheme or plan" exception. *Lay,* 659 N.E.2d at 1015 (Shepard, C.J., dissenting). However, even under the broader "common scheme or plan" analysis, we have rejected the admission of prior bad acts similar to those found in this case. For example, in *Sloan v. State,* even though Sloan was only charged with one episode of child molesting, the victim was permitted to testify, over Sloan's objection, regarding multiple molestations by Sloan over a six-year period. *Sloan v. State,* 654 N.E.2d 797, 799 (Ind.Ct.App. 1995), *abrogated on other grounds by Hicks v. State,* 690 N.E.2d 215, 220–221 (Ind.1997) (rejecting the Seventh Circuit's four-part test for assessing Ind. Evidence Rule 404(b) claims). The testimony regarding the prior molestations was offered as evidence of Sloan's common scheme or plan to exploit and sexually abuse the victim. *Id.* at 800. We held that "[t]here is no evidence to establish that Sloan's molesting of the victim for six years was pursuant to any preconceived plan. Nor could monthly molesting which continued for six years constitute an uninterrupted transaction." *Id.* at 801.

Similarly, in *Pirnat v. State,* the defendant was charged with molesting his stepson. *Pirnat v. State,* 612 N.E.2d 153, 154 (Ind.Ct.App.1993), *abrogated on other grounds by Hicks v. State,* 690 N.E.2d 215, 220–221 (Ind.1997) (rejecting the Seventh Circuit's four-part test for assessing Ind. Evidence Rule 404(b) claims). Testimony was permitted at trial regarding Pirnat's prior conviction for molesting his former stepdaughter. *Id.* We held that:

> The only way to admit this evidence properly would be to reason that Pirnat had a plan of criminal activity which involved marrying women in order to molest their children. Both of the molestations involved Pirnat's stepchildren; however, admitting this evidence requires an improperly broad interpretation and application of the Fed.R.Evid. 404(b) exceptions. We cannot say that Pirnat's previous conviction was "similar act" evidence sufficiently connected with the charged crime to enable the State to take advantage of this exception.

*Id.* at 155–156.

Lastly, in *Moore v. State,* the defendant was charged with attempted criminal deviate conduct for posing as a police officer, initiating a traffic stop on the victim, and

attempting to force the victim to perform fellatio upon him. *Moore v. State*, 653 N.E.2d 1010, 1014 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* At his trial, evidence of a prior rape conviction was admitted under Ind. Evidence Rule 404(b). *Id.* at 1015. In the prior rape, Moore had posed as a police officer, initiated a traffic stop on the victim, and then raped her. *Id.* at 1014–1015. We held that:

> By no stretch of the imagination could the evidence of Moore's conviction have been admitted as evidence of a preconceived plan which included the instant offenses. An uninterrupted transaction requires that the crimes be committed in conjunction with each other; here, eleven months separated the incidents and we note as well that the events took place in separate counties. Thus, the evidence was not admissible to prove identity or to establish a common scheme or plan.

*Id.* at 1017.

In this case, there is, likewise, no evidence of a preconceived plan to molest C.G. Even under the broader "common scheme or plan" analysis, evidence of Greenboam's prior molestations would be inadmissible. Likewise, the evidence of Greenboam's prior molestations of C.G. is inadmissible under the narrower "plan" exception. Thus, we hold that the evidence of Greenboam's prior molestations of C.G. and S.H. does not establish a plan admissible under Ind. Evidence Rule 404(b).

■■■ Moreover, the evidence of Greenboam's prior molestations is not admissible for any other permissible purpose under Ind. Evidence Rule 404(b).[4] In this case, Greenboam made no claim that he had touched C.G., but without the intent to gratify. Had he done so, his prior molestations, at least of C.G., could have been admissible to prove intent. However, here Greenboam denied that he touched C.G. altogether. Hence, his intent was not put in issue. *Cf. Johnson v. State*, 722 N.E.2d 382, 385 (Ind.Ct.App.2000); *Smith v. State*, 678 N.E.2d 1152, 1157 (Ind.Ct.App.1997), *reh'g denied, trans. denied; Day v. State*, 643 N.E.2d 1, 4–5 (Ind.Ct.App.1994), *trans. denied; Butcher v. State*, 627 N.E.2d 855, 859 (Ind.Ct.App.1994), *reh'g denied.* Rather, the evidence of the prior molestations serves only to establish Greenboam's propensity to commit child molesting. *See, e.g., Craun v. State*, 762 N.E.2d 230, 237 (Ind.Ct.App.2002). Thus, the trial court abused its discretion by admitting the evidence of Greenboam's prior molestation of C.G. and S.H. *See, e.g., Sundling*, 679 N.E.2d at 993.

■■■ The State argues that even if the admission of Greenboam's prior moles-

---

4. In his dissent, Judge Bailey notes that a defendant's prior bad acts are usually admissible to show the relationship between the defendant and the victim. Dissent at 2, n. 1 (citing *Hicks v. State*, 690 N.E.2d 215, 222 (Ind.1997)). However, the relationship between the defendant and the victim is typically relevant to show the defendant's intent or motive. *See, e.g., Crain v. State*, 736 N.E.2d 1223, 1235 (Ind.2000) (holding that in light of defendant's claim of particular contrary intent that he accidentally killed his wife, evidence of prior spousal battery shed light on defendant's relationship with the victim); *Spencer v. State*, 703 N.E.2d 1053, 1056 (Ind. 1999) ("[W]here a relationship between par-

ties is characterized by frequent conflict, evidence of the defendant's prior assaults and confrontations with the victim may be admitted to show the relationship between the parties and motive for committing the crime— 'hostility.'"); *Ross v. State*, 676 N.E.2d 339, 346 (Ind.1996) (holding that the evidence of prior bad acts was "admissible because it demonstrated the defendant's motive and intent to commit the murder, illuminated the relationship between the defendant and victim"). Here, Greenboam's motive and intent were not at issue. Rather, evidence of Greenboam's prior molestations of C.G. served only to establish that he acted similarly in this case.

tations was erroneous, the error was harmless. The erroneous admission of evidence is deemed harmless unless such error affected the substantial rights of the parties. *Id.* at 994; *see also* Ind. Trial Rule 61; Ind. Evidence Rule 103(a). In determining whether reversal is mandated, we must assess the probable impact of the improper evidence upon the jury. *Sundling*, 679 N.E.2d at 994. The erroneous admission of evidence is harmless when there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction. *Id.* However, reversal is warranted if the record as a whole reveals that the improper evidence was likely to have had a prejudicial impact on the average juror such that it contributed to the verdict. *Id.*

We must analyze the probable impact of the testimony of Captain Ritter, C.G., and S.H. upon the jury. Captain Ritter testified only that Greenboam said that "he did not touch [C.G.'s] breasts or crotch since the last time he did it in the past." Transcript at 399. Moreover, during his opening statement, counsel for Greenboam stated:

During the course of that interview you folks need to know right now, [Greenboam] admitted to Detective Ritter that he had inappropriately touched [C.G.] in the past. I believe it will show once this gets going more than two years past. But he firmly denied any of these accusations that you folks are being asked to preside over in this case.

Transcript at 373. Because Greenboam admitted the substance of Captain Ritter's testimony during opening statements, any error in the admission of Captain Ritter's testimony regarding Greenboam's prior molestations was unlikely to have contributed to the convictions and was harmless.

C.G. testified very briefly regarding the prior molestation. C.G.'s testimony gave no details of the prior molestation except that Greenboam touched her breast and crotch and made her touch him. C.G. did not testify regarding Greenboam's arrest or conviction for the prior molestation. Based upon Captain Ritter's testimony and C.G.'s testimony, we would be inclined to find harmless error in this case. The prejudicial impact of this extremely limited testimony was unlikely to have contributed to Greenboam's convictions in light of C.G.'s wrenching, detailed testimony of the current molestations.

However, S.H.'s testimony tips the balance. The only evidence of Greenboam's molestation of C.G. between August 1997 and November 1998 came from C.G. S.H.'s testimony that Greenboam had previously molested her and C.G. undoubtedly gave credibility to C.G.'s testimony. We have previously held that "[s]uch cases often hinge on the child's credibility, and interjecting another allegation of molestation is almost certain to give much more credibility to the charged allegation." *Werne v. State*, 750 N.E.2d 420, 424 (Ind. Ct.App.2001), *trans. denied.* Additionally, our supreme court has "cautioned that evidence of prior misconduct offered to bolster a key witness's testimony as to the current charge, although often probative on that point, is also quite prejudicial." *Thompson v. State*, 690 N.E.2d 224, 235 (Ind.1997).

Although the trial court instructed the jury as to the limited purpose for which the evidence could be considered, we cannot say that the impact of the improperly admitted evidence upon the jurors was significantly lessened. *See Sundling*, 679 N.E.2d at 994. A substantial likelihood exists that the erroneously admitted evidence contributed to the verdict and had an impact upon Greenboam's substantial

rights. *See id.* We have no alternative but to conclude that S.H.'s erroneously admitted testimony regarding the prior molestations likely played a role in Greenboam's conviction. Thus, the erroneous admission of the evidence was not harmless error and we are required to reverse Greenboam's convictions. *See, e.g., id.*

## II.

 Although we reverse Greenboam's convictions based upon the erroneous admission of the evidence of his prior molestations of C.G. and S.H., we must consider Greenboam's sufficiency argument as it relates to whether or not he may be retried. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, generally does not bar a retrial on the same crimes where the reversal is due to error in the admission of evidence. *Thompson,* 690 N.E.2d at 237. However, double jeopardy forbids a retrial if the reviewing court concludes that the evidence is legally insufficient to support the conviction. *Id.* Evidence is sufficient if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.* Generally we do not reweigh evidence or assess the credibility of witnesses. *Id.*

 However, Greenboam argues that we should assess C.G.'s credibility because C.G.'s testimony was "inherently improbable" and "unworthy of belief." Appellant's Brief at 27, 29.

When confronted with testimony that is inherently improbable or coerced, equivocal, wholly uncorroborated or of incredible dubiosity, we may make an exception and reweigh the credibility of a witness. We have limited this excep-tion, however, to cases where a sole witness presents inherently contradictory testimony that is equivocal or the result of coercion, and there is a complete lack of circumstantial evidence of guilt.

*Bowles v. State,* 737 N.E.2d 1150, 1152 (Ind.2000) (citations omitted).

Greenboam contends that C.G.'s version of events is improbable because Greenboam's wife and the other children in the residence would have noticed the molestations. Greenboam further contends that it is "highly unlikely that an adult male can ejaculate and then sodomize another individual." Appellant's Brief at 29. Greenboam's arguments are without merit. Our supreme court has instructed that the incredible dubiosity exception is applicable only where the sole witness presents inherently contradictory testimony. *See Bowles,* 737 N.E.2d at 1152. Greenboam points out nothing inherently contradictory in C.G.'s testimony. Moreover, our review of C.G.'s testimony reveals no inherent contradiction.

 C.G. testified about five occasions where her father, Greenboam, molested her. The incidents included Greenboam forcing C.G. to touch his penis, forcing C.G. to place her mouth on his penis, penetrating C.G.'s anus with his penis, inserting his finger into C.G.'s vagina, and touching C.G.'s chest and crotch. A victim's testimony, even if uncorroborated, is ordinarily sufficient to sustain a conviction for child molesting. *Id.* The evidence in this case is sufficient such that retrial is not barred by the prohibition against double jeopardy. *See, e.g., Werne,* 750 N.E.2d at 424–425; *see also Craun,* 762 N.E.2d at 239.

Because of our resolution of Greenboam's first issue, we need not address whether his sentence was manifestly un-

reasonable. For the foregoing reasons, we reverse Greenboam's convictions for four counts of child molesting as class A felonies and remand for a new trial.

Reversed and remanded.

DARDEN, J., concurs.

BAILEY, J., dissents with separate opinion.

Judge BAILEY, dissenting.

I respectfully dissent. In my opinion, it is unlikely that the jury relied upon allegedly improper 404(b) evidence to reach its verdicts, in light of the victim's testimony, which the majority accurately deems "wrenching" and "detailed." Majority Opinion at ——.

In order to admit Indiana Evidence Rule 404(b) evidence, the trial court must (1) determine that the evidence is relevant to a matter at issue other than the defendant's propensity to commit the charged act, and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Jackson v. State*, 728 N.E.2d 147, 152 (Ind. 2000). This balancing is reviewed for an abuse of discretion. *Id.* Considering Greenboam's systematic plan to abuse the female children in his home, clearly established by the State's evidence, I cannot conclude that Greenboam has demonstrated an abuse of the trial court's discretion.

Moreover, reversal is compelled only if the record as a whole discloses that erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict. *Bonner v. State*, 650 N.E.2d 1139, 1141 (Ind.1995). I fully concur with the majority's conclusion that C.G.'s and Captain Ritter's testimony of

prior molestation was unlikely to have contributed to Greenboam's convictions. As the majority observes, C.G.'s testimony gave no details of her prior molestation by Greenboam except that Greenboam touched her breast and crotch and made her touch him.[5] Greenboam had admitted as much to Detective Ritter, and commented upon the admission during his opening statement. However, I disagree that S.H.'s testimony "tips the balance." Majority Opinion at 16. Even assuming that S.H.'s testimony improperly bolstered the testimony of C.G., any error was harmless in light of the overwhelming evidence of Greenboam's guilt, including C.G.'s testimony (in precise detail) of her five recent molestations by Greenboam.

I would affirm Greenboam's conviction of child molesting.

---

5. Moreover, a defendant's prior bad acts are usually admissible to show the relationship between the defendant and the victim. *Hicks v. State*, 690 N.E.2d 215, 222 (Ind.1997).