**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARIELENA DUERRING**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSE B. RODRIGUEZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A05-1309-CR-491 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-1008-FA-29

**August 26, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

Jose B. Rodriguez, after a jury trial, was convicted of four counts of Class A felony child molesting. He raises one issue for our review: whether the trial court abused its discretion in admitting evidence of extra-jurisdictional prior bad acts. Concluding any error in the admission of evidence was harmless, we affirm.

## Facts and Procedural History

Rodriguez and Dawn Hernandez began dating and then married while living in New York. At the time, Hernandez had five children from previous relationships: M.V., Ariel, Alberto, Sonia, and Carlos. After living in New York together, Rodriguez, Hernandez, and the children moved to Elkhart, Indiana, in 2006.

In Elkhart, Rodriguez called thirteen-year-old M.V. into the bathroom and instructed M.V. to perform oral sex on him. The sexual contact between the two continued throughout the year, including a time Rodriguez performed oral sex on M.V. in his bedroom. On another such occurrence, Hernandez stepped out of the bathroom, and from her vantage point, was able to see M.V. and Rodriguez on the living room couch. M.V. was lying with her head in Rodriguez's crotch. M.V.'s pants were down and Rodriguez's hand was on M.V.'s buttocks. Hernandez immediately confronted Rodriguez, but Rodriguez denied any wrongdoing. When M.V. talked to her mother, she told her Rodriguez made her "lick his thing." Transcript at 78. Rodriguez then confronted M.V. and told her he was going to have to leave, and it was M.V.'s fault. After that conversation, M.V. told her mother she lied. The subject was dropped after M.V. recanted. Rodriguez

later engaged in intercourse with M.V., still while M.V. was thirteen, telling her that they were going to "try something different." Tr. at 84.

In June 2010, Rodriguez and Hernandez separated. Hernandez's reason for leaving was that she was "tired of having to answer to him" and felt uncomfortable with Rodriguez's interactions with M.V. Tr. at 171-72. M.V. was seventeen at the time of the separation. Hernandez and the children moved into Mary Hurst's home; Mary was someone Hernandez knew through work. On July 12, 2010, M.V. told her mother that Rodriguez had been molesting her. Hernandez told Mary what M.V. said; she next called her pastor for comfort. Mary was the one who finally called the police to report the molestation. In September 2010, Hernandez became pregnant by Matthew Hurst, Mary's son. Rodriguez and Hernandez divorced in January 2012.

On August 4, 2010, Rodriguez was charged with four counts of child molesting,[1] all Class A felonies. A jury trial began on July 29, 2013. The State sought to introduce testimony from M.V. that when she was eleven years old and living in New York, Rodriguez showed her a pornographic video of a man and a woman engaging in oral sex. Over Rodriguez's Indiana Evidence Rule 404(b) objection, the trial court allowed the testimony. M.V. testified that she did not know what was happening in the video, so Rodriguez answered her questions. M.V. thought the people in the video looked like they were enjoying themselves; Rodriguez told her he could show her how to do that, and the

---

[1] Each felony count represented one instance of sexual contact that occurred between September 7, 2006, and January 12, 2007: M.V. performing oral sex on Rodriguez in the shower, Rodriguez performing oral sex on M.V. in the bedroom, M.V. performing oral sex on Rodriguez on the couch, and sexual intercourse in the bedroom, respectively.

two shook hands as if making a deal. At the conclusion of M.V.'s testimony, the State moved to admit evidence of prior bad acts that occurred in New York that were witnessed by her sister Ariel; the court refused to admit the testimony at that time.

Hernandez testified next. At the conclusion of cross-examination, the State again sought to introduce evidence of prior bad acts that occurred in New York. At that time, the court allowed the evidence over Rodriguez's objection. Hernandez was permitted to testify that Ariel had witnessed sexual contact between M.V. and Rodriguez and reported it to her. Hernandez's only action was to ask Rodriguez if it was true. When Rodriguez denied it, Hernandez let the subject drop. Ariel then testified, over objection, about witnessing M.V. perform oral sex on Rodriguez and being punished for telling her mother what she had seen. Ariel also testified about a second time she witnessed Rodriguez and M.V. engaging in sexual activity in New York, but did not report it out of fear of being punished. No limiting instruction was requested or given based on this testimony.

Rodriguez was convicted of all four counts of child molesting, and he was sentenced to forty years on each count, to be served concurrently. He now appeals. Additional facts will be provided as needed.

Discussion and Decision

I. Standard of Review

Rodriguez challenges the admission of the evidence of the video and uncharged sexual acts as errors in light of Rule 404(b). A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. Iqbal v. State, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible of other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

Ind. Evidence Rule 404(b) (2013). This rule is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities, the so called 'forbidden inference.'" Hicks v. State, 690 N.E.2d 215, 218-19 (Ind. 1997). The list of other purposes for which the evidence may be admitted is illustrative, not exhaustive. Id. at 219. The standard for assessing the admissibility of Rule 404(b) evidence is:

> (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.

Id. at 221.[2] We employ the same test to determine whether the trial court abused its discretion. Ware v. State, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004). If we find an abuse of discretion, we then must assess the probable impact of improper evidence upon the jury. Greenboam v. State, 766 N.E.2d 1247, 1256 (Ind. Ct. App. 2002), trans. denied. Any error is harmless when there is substantial independent evidence of guilt and it is unlikely that the erroneously admitted evidence played a role in the conviction. Id. Reversal is mandated, however, "if the record as a whole reveals that the improper evidence was likely to have had a prejudicial impact on the average juror such that it contributed to the verdict." Id.

## II. Admission of Testimony Regarding the Video

---

[2] Indiana Evidence Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." (2013).

Rodriguez first challenges the admission of M.V.'s testimony regarding the pornography Rodriguez showed her in New York, arguing the probative value is substantially outweighed by the prejudicial impact.

Under the first prong of the Hicks test, we must consider if the evidence is relevant other than to the defendant's propensity to commit the charged act. 690 N.E.2d at 221. The court allowed the testimony to come in, over objection, ruling that it showed preparation and grooming, and explained how a child of tender years would know what fellatio is, and how to perform it. On appeal, the State argues this evidence shows Rodriguez was grooming M.V. and was part of his preparation leading up to the molestation. We agree that showing Rodriguez's preparation and grooming of M.V. is a relevant reason to admit this evidence under Rule 404(b) and does more than just show his propensity to molest M.V.

We must next weigh this evidence's probative value against the prejudicial impact. Hicks, 690 N.E.2d at 221. Rodriguez argues M.V.'s description, reaction, and "handshake" conversation were details that only blackened Rodriguez's character, and by skipping in time from what took place in New York in 2004 to Indiana events in 2006 does nothing but show Rodriguez's propensity to commit the crime. Both Rodriguez and the State rely on Ware and Piercefield v. State, 877 N.E.2d 1213 (Ind. Ct. App. 2007), trans. denied, to support their respective arguments.

In Ware, evidence was admitted at trial over the defendant's objection that he had taken his victim on multiple vacations out of state, and during the vacations, the defendant and his victim engaged in sexual activity that was similar to what happened in Indiana.

The State argued the evidence was admitted to show the defendant knew the victim's age and to rebut the defendant's defense that he did not engage in sexual activity with his victim until the victim was sixteen. This court rejected that reasoning, and found that despite the fact the vacations might be relevant to show that the defendant was grooming his victim, the extra-jurisdictional sexual contact evidence appeared to be relevant only to his propensity to molest. Ware, 816 N.E.2d at 1175-76. Accordingly, the evidence's prejudicial effect outweighed its probative value, and it was an error for the evidence to be admitted.[3] Id. at 1176.

Ware was subsequently distinguished by Piercefield. In Piercefield, the defendant sought to exclude evidence under Rule 404(b) that his stepchildren gave him massages at his request, or in order to be allowed to do things, such as play video games. The State argued massages were not criminal acts as contemplated by Rule 404(b), and regardless, the evidence was relevant to show that the defendant was grooming or preparing his stepchildren for sexual abuse. This court found that the defendant was familiarizing the children with touching his body and was the evidence admissible to show the defendant's preparation and plan. Piercefield, 877 N.E.2d at 1216. This court also found this testimony did not violate Rule 404(b), and noted that this conduct was far less prejudicial than evidence of sexual activity in Ware, because the massages were not criminal by themselves and were not overly sexual. Id.

---

[3] The court ultimately held the erroneous admission was harmless, as the jury had been given a limiting instruction specifically instructing them not to consider the evidence of extra-jurisdictional acts as evidence of guilt. Ware, 816 N.E.2d at 1176.

Here, the State tries to liken Rodriguez's conduct to that in Piercefield, rather than Ware. The State argues that Rodriguez did not touch M.V. while watching the video, and it was not criminal for him to show her the video, just as it was not criminal for the stepchildren in Piercefield to give their stepfather a massage. We need not address whether it was illegal for Rodriguez to show M.V. pornography because by the plain language of Rule 404(b) the other act does not have to be criminal; it simply must work to create the forbidden inference.

The State elicited M.V.'s testimony that she watched a pornographic video with Rodriguez in New York, and he promised to teach her how to engage in oral sex. After M.V. described the video and "deal," the State questioned her about the charged acts, asking if "there ever [was] a time where Jose Bobby Rodriguez instructed [her] to do what [she] saw in the video." Tr. at 66. While we acknowledge that grooming is "the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point where it is possible to perpetrate a sex crime against the victim," Piercefield, 877 N.E.2d at 1216 n.1 (citation omitted) (quotations omitted), and is a process that happens over time, that does not negate the prejudicial impact of the evidence. We are cautious in allowing evidence under an exception to Rule 404(b), especially under the wide-reaching umbrella of "grooming evidence," because evidence of these other uncharged acts can often be unduly prejudicial. Brown v. State, 577 N.E.2d 221, 226 (Ind. 1991). Here we find the evidence that Rodriguez showed M.V. pornography was prejudicial. We also conclude that the evidence was probative, as it showed Rodriguez preparing M.V. to be comfortable with the idea of oral sex and was more similar to the conduct in Piercefield

than <u>Ware</u>. Therefore, we cannot say the prejudice substantially outweighs the probative impact of this evidence. The trial court did not abuse its discretion in admitting this evidence. We note that even if we had determined this evidence was erroneously admitted, this would be harmless error as there was substantial independent evidence of guilt and it is unlikely that testimony regarding the pornography played a role in the conviction.

### III. Admission of Testimony Regarding Uncharged Sexual Acts

Rodriguez next challenges the admission of Hernandez's and Ariel's testimony regarding instances of sexual contact that occurred in New York. Rodriguez inquired on cross-examination about Hernandez's relationship with Matthew, exploring Hernandez's credibility as to why she actually left Rodriguez, with the implication being that she was having an affair and reported the molestation as a "way out" of the marriage. After that testimony, the State sought, on redirect, to establish that Hernandez knew of the sexual contact even as far back as New York, and simply did not report the conduct to authorities. The State argued Rodriguez opened the door to this testimony, and this evidence would rehabilitate M.V., because her credibility was suspect. The trial court allowed the evidence, because Rodriguez, through cross-examination,

> created an inference that [Hernandez] only reported this as a result of her infatuation with another person. It's my understanding that there were two incidents when the parties lived in New York in which [Hernandez] also became aware of sexual contact between the Defendant and the alleged victim, and I'm going to allow [the State] to explore the reason for not reporting this earlier. That is the extent of what I'm going to permit.

Tr. at 212. The court made this ruling outside the presence of the jury and did not give a limiting instruction when the jury returned. The court noted Rodriguez's continuing objection to the testimony.

To "open the door" to Rule 404(b) evidence that is otherwise inadmissible, "the evidence relied upon to 'open the door' must leave the trier of fact with a false or misleading impression of the facts related." Ortiz v. State, 741 N.E.2d 1203, 1208 (Ind. 2001) (quoting Gilliam v. State, 270 Ind. 71, 77, 383 N.E.2d 297, 301 (1978)). The State argues Rodriguez "opened the door" to this testimony about sexual contact in New York by creating a false or misleading impression that Hernandez made the allegations only after she began an affair with another man and that M.V. made the allegations simply to be free of Rodriguez's discipline.

Rodriguez maintains he was exploring Hernandez's bias as contemplated by Indiana Evidence Rule 616 when cross-examining her as to her relationship with Matthew and her motivation to leave Rodriguez, as she had known about the molestation (based on her testimony that she saw M.V.'s face in Rodriguez's crotch) for years prior to M.V. disclosing it at Mary's house. Additionally, Rodriguez argues evidence that Hernandez knew of molestations years before in New York does nothing to explain or explore why she waited to report it. We agree with Rodriguez that the evidence Hernandez knew of acts of molestation in New York and never reported it does nothing to rebut the evidence of Hernandez's bias stemming from her relationship with another man.

Even if Ariel's testimony that she was punished for reporting what she witnessed to her mother in New York was relevant to show Rodriguez was a disciplinarian and

Hernandez was afraid to leave him, this evidence would still be inadmissible because of the prejudice to Rodriguez. Aside from M.V.'s testimony, the only other witness to the charged crimes was Hernandez, who saw one instance of molestation. There were three other instances of charged conduct that had no other witness besides M.V. While the uncorroborated testimony of a victim may be enough to support a molestation conviction, Archer v. State, 996 N.E.2d 341, 351 (Ind. Ct. App. 2013) (citing Barger v. State, 587 N.E.2d 1304, 1308 (Ind. 1992)), trans. denied, molestation cases "often hinge on the child's credibility, and interjecting another allegation of molestation is almost certain to give much more credibility to the charged allegation." Greenboam, 766 N.E.2d at 1256 (citations omitted). "Additionally, our supreme court has cautioned that evidence of prior misconduct offered to bolster a key witness's testimony as to the current charge, although often probative on that point, is also quite prejudicial." Id. (internal quotation marks omitted). Ariel's testimony that she witnessed Rodriguez and M.V. engaging in sexual conduct in New York undoubtedly gave credibility to M.V.'s allegation that molestations happened in Elkhart. This bolstering is quite prejudicial and therefore is inadmissible. The trial court abused its discretion in allowing this evidence.

IV. Probable Impact of the Improper Evidence upon the Jury

Having found that the testimony regarding the two New York incidents Ariel witnessed should not have been admitted, we now turn to the question of whether the errors were harmless. We are to consider the record as a whole; and having so considered, we find substantial independent evidence of Rodriguez's guilt. Id. at 1256. M.V. was unequivocal in her testimony that Rodriguez molested her. Hernandez witnessed an

incident of sexual contact between Rodriguez and M.V. in the living room. M.V.'s brother's and sister's testimony corroborated M.V.'s story, as they testified about seeing odd activity between Rodriguez and M.V., and that the two spent a lot of time together away from everyone else. Therefore, we conclude the erroneous admission of the evidence was harmless.

## Conclusion

We conclude it was not an abuse of discretion to admit the testimony regarding the pornographic video, but that it was an abuse of discretion to admit Hernandez's and Ariel's testimony regarding events that took place in New York; however, as we find this was harmless error, we affirm.

Affirmed.

RILEY, J., and BRADFORD, J., concur.