**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**MITCHELL A. PETERS**
MillerFisher Law LLC
Merrillville, Indiana

**LARRY W. ROGERS**
Harper and Rogers
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER TRUMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 64A05-1403-CR-140 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Mary R. Harper, Judge
Cause No. 64D05-1209-FA-8900

**December 9, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

On September 4, 2012, Appellee-Plaintiff the State of Indiana (the "State") charged Appellant-Defendant Christopher Truman with nine counts relating to the sexual abuse of minors: Counts I–III, Class A felony child molesting; Count IV, Class B felony sexual misconduct with a minor; Counts V–VI, Class C felony sexual misconduct with a minor; Counts VII–IX, Class C felony child molesting. (App. 1) After a four-day trial, the jury returned guilty verdicts for each count. (App. 235) On February 25, 2014, Truman was sentenced to an aggregate term of 118 years imprisonment. (App. 236) The victims of the molestations were four minor boys, N.D., J.F., A.G., and J.L., who were fourteen, eleven, sixteen, and twenty-three years old, respectively, at the time of Truman's arrest. (Appellant's Br. 10)

Truman raises three issues on appeal: (1) whether the evidence is sufficient to sustain his convictions, (2) whether the trial court erred by admitting hearsay evidence, and (3) whether the trial court abused its discretion in sentencing Truman. In all respects, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

*Facts Concerning Victim N.D.*

Heather C. is the mother of N.D. Heather met Truman through her former live-in boyfriend, John F., who had been close friends with Truman since high school. (Tr. 183) During the time Heather and John were together, Truman befriended N.D. (Tr. 184) Truman and N.D. spent a great deal of time together playing video games, watching professional

2

wrestling every Monday and Thursday, and swimming at Truman's father's house in the summer and at a local Days Inn hotel in the winter. (Tr. 185, 217, 357, 360) Despite the fact that John and Heather separated, and John moved out of Heather's trailer, Truman continued to spend time with N.D. (Tr. 186) When N.D. was twelve or thirteen, Heather began noticing a change in N.D.'s behavior. (Tr. 186-88) N.D. became angrier and wanted to spend less time with Truman. (Tr. 186) Heather became suspicious of Truman when he began spending what she felt was too much time in N.D.'s room with the door closed. (Tr. 187)

Truman began molesting N.D. when N.D. was six or seven years old. (Tr. 357) The molestations took place at Heather's home, at the hotel, and, on one occasion, at Truman's home. (Tr. 357-363) The first incident occurred at Heather's home when Truman pulled down N.D.'s pants while N.D. was sleeping and placed his mouth on N.D.'s penis. (Tr. 357) On separate occasions, when the two were watching wrestling at the hotel, Truman would remove N.D.'s clothes and place his mouth on N.D.'s penis during the commercial breaks. (Tr. 362) N.D. estimated Truman put his mouth on N.D.'s penis 1000 times. (Tr. 363)

By early July of 2012, Heather's suspicions had grown, and she asked N.D. if anything inappropriate was going on with Truman when the bedroom door was closed. (Tr. 188) N.D. initially denied that anything inappropriate was happening. (Tr. 189) N.D. testified that he initially denied the incidents because Truman would buy him gifts, such as an X Box 360 console and video games, to keep N.D. from revealing the molestations. (Tr. 368-69) On August 4, 2012, Heather again asked N.D. if anything inappropriate was going on at which

3

point N.D. disclosed the abuse, providing Heather with "minimal detail" about the molestations. Tr. p. 190. Heather immediately relayed the allegations to John. (Tr. 190)

*Facts Concerning Victim J.F.*

J.F. is John's son. Upon hearing the allegations from Heather, John asked J.F. if Truman had ever molested him. (Tr. 222-23) J.F. began to cry and told John that on one occasion Truman had touched him and put his mouth on J.F.'s penis. (Tr. 223) J.F. testified that the incident occurred when he was eight years old on a night when he was staying with John at Heather's trailer. (Tr. 274, 293) John and Truman had gone out drinking, after which they returned to Heather's trailer to go to sleep. (Tr. 227, 274) J.F. had fallen asleep on the couch and woke up to find that Truman had his hand in J.F.'s boxers and was rubbing J.F.'s penis. (Tr. 277-78) John and Heather were asleep at the time. (Tr. 226, 245) A short time later, Truman pulled J.F.'s boxers down to his knees and placed J.F.'s penis in his mouth. (Tr. 279-281) Truman left early in the morning before John woke up. John remarked it was unusual for Truman to leave so early following a night of drinking. (Tr. 225, 282)

*Facts Concerning Victim J.L.*

Truman was a friend of J.L.'s family. (Tr. 316). J.L.'s relationship with his family was poor and as a result he began spending a great deal of time with Truman starting when he was nine years old. (Tr. 316) Truman helped support J.L. financially. (Tr. 329) As with the other victims, J.L. and Truman shared an interest in professional wrestling. (Tr. 320) Truman would regularly take J.L. to his house on Mondays and Thursdays where the two

4

would watch wrestling on TV and play wrestle with one another. (Tr. 320) During these times, Truman would molest J.L. (Tr. 318). Whenever J.L. would irritate Truman, Truman would "hold [J.L.] down and play with [J.L.]'s penis for punishment." Tr. p. 319. These molestations began when J.L was eleven and continued every Monday and Thursday (the date on which the wrestling program was aired) until J.L. moved to Alabama when he was seventeen years old. (Tr. 320, 333) J.L. estimated that he was molested in this manner over 600 times. (Tr. 320)

In addition to the wrestling molestations, another incident occurred while Truman and J.L. were swimming in Truman's father's pool. (Tr. 321) While Truman and J.L. were wrestling in the pool, Truman pinned J.L. against the side of the pool and inserted his thumb into J.L.'s "butt." Tr. p. 321. J.L.'s sister was also in the pool at the time and Truman told her she would never be allowed back at the pool if she told anyone what had happened. (Tr. 321-322)

*Facts Concerning Victim A.G.*

Brian T. is the father of A.G. and had been good friends with Truman since high school. (Tr. 403) Truman had been like an uncle to A.G. and the two spent a great deal of time together watching wrestling. (Tr. 405) A.G. is mildly mentally retarded. (Tr. 402) Upon hearing of the allegations, Brian asked A.G. if Truman had molested him as well. (Tr. 408) A.G. informed Brian that Truman had molested him several times. (Tr. 408) A.G.'s bedroom was in the basement of Brian's home. (Tr. 411) Truman would go to Brian's home once or twice a week to watch wrestling with A.G. (Tr. 411) The two would watch

5

wrestling in A.G.'s bedroom, usually alone but occasionally with some of the other victims. (Tr. 410-11) A.G. also accompanied Truman to the Days Inn to swim and watch wrestling. (Tr. 411)

A.G. testified to numerous incidents of molestation that occurred at Brian's home, at the hotel, and at Truman's home. (Tr. 421-29)

Q: Did you ever put your mouth on [Truman's] penis?
A: Yeah.
Q: Okay. How many times?
A: Only once.
Q: Okay. And how many times did you put your penis in his butt?
A: Probably like three or four times.
Q: Okay. How many times did he put his finger in your butt?
A: Two or three times.

Tr. p. 426. Truman also showed A.G. pornography and took nude photographs of A.G. (Tr. 433)

## DISCUSSION AND DECISION

Truman raises the following issues on appeal: (1) whether the evidence is sufficient to sustain his convictions; (2) whether the trial court erred by admitting hearsay evidence; and (3) whether the trial court abused its discretion in sentencing Truman.

### I. Sufficiency of the Evidence

Truman contends that the State did not introduce sufficient evidence to support the convictions. In reviewing a challenge to the sufficiency of evidence, this court does not reweigh evidence or re-assess the credibility of witnesses, and considers conflicting evidence in a light most favorable to the trial court's decision. *Cole v. State*, 878 N.E.2d 882, 885

(Ind. Ct. App. 2007); *Vitek v. State*, 750 N.E.2d 346, 352 (Ind. 2001). "We look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom." *Vitek*, 750 N.E.2d at 352. "Evidence is insufficient to convict when no rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *Matthews v. State*, 718 N.E.2d 807, 810-11 (Ind. Ct. App. 1999) (citing *Cuto v. State*, 709 N.E.2d 356, 362 (Ind. Ct. App. 1999)).

It was the State's burden to prove each element of the charged crimes. Class A felony child molesting is defined as performing or submitting to sexual intercourse or deviate sexual conduct with a child under the age of fourteen if committed by a person at least twenty-one years of age. Ind. Code § 35-42-4-3. Class C felony child molesting is defined as performing or submitting to "any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person." *Id*. Class B felony sexual misconduct with a minor is defined as performing or submitting to sexual intercourse or deviate sexual conduct with a child at least fourteen years of age but less than sixteen, if committed by a person at least twenty-one years of age. Ind. Code § 35-42-4-9. Class C felony sexual misconduct with a minor is defined as any person of at least twenty-one years of age performing or submitting to "any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person" with a child at least fourteen years of age but less than fifteen. *Id*. "Deviate sexual conduct" is defined as an act involving a sex organ of one person and the mouth or anus of another person. Ind. Code § 35-31.5-2-94(1).

7

As outlined in the facts, each victim testified that Truman submitted them to multiple sexual encounters. Truman claims that the evidence was insufficient because (1) there was no "forensic or medical evidence offered to suggest any of the alleged victims were sexually abused," (2) there were inconsistencies in the witnesses' testimony, and (3) none of the victims' parents actually witnessed any inappropriate or sexualized behavior between Truman and their children. Appellant's Br. p. 6. As to the first and third contention, our court has held that testimony from the victim alone is sufficient to sustain a conviction. *Warren v. State*, 701 N.E.2d 902, 906 (Ind. Ct. App. 1998). "Furthermore, a conviction may stand on the uncorroborated evidence of a minor witness." *Id*. (citing *Nelson v. State*, 525 N.E.2d 296, 297 (Ind. 1988). With regards to Truman's contention that there were inconsistencies in the witnesses' testimony, this is no more than an invitation for this court to reweigh the evidence, which we will not do. *See Vitek*, 750 N.E.2d at 352. Any alleged inconsistencies in a witness's testimony go to the credibility of the witness and this court will not impinge upon the jury's responsibility to determine the credibility of witnesses. *Murray v. State*, 761 N.E.2d 406, 408 (Ind. 2002). Accordingly, the evidence is sufficient to sustain the jury's finding of guilt.

## II. Hearsay Evidence

Hearsay is "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). "'The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and we will reverse only upon an abuse of that discretion.'"

*Collins v. State*, 835 N.E.2d 1010, 1016 (Ind. Ct. App. 2005) (quoting *Greenboam v. State*, 766 N.E.2d 1247, 1250 (Ind. Ct. App. 2002), *trans. denied*). "'An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.'" *Id.* (quoting *Greenboam*, 766 N.E.2d at 1250).

"'Failure to object at trial waives any claim of error and allows otherwise inadmissible hearsay evidence to be considered for substantive purposes and to establish a material fact at issue.'" *Johnson v. State*, 734 N.E.2d 530, 532 (Ind. 2000) (quoting *Allen v. State*, 686 N.E.2d 760, 775 (Ind. 1997)). Truman did not object to the alleged hearsay statements during trial; therefore, his claim of error is waived. *Cole v. State*, 970 N.E.2d 779, 782 (Ind. Ct. App. 2012). "One way to escape such waiver is by claiming the error is fundamental. Fundamental errors are clearly blatant violations of basic and elementary principles, and the harm or potential for harm could not be denied. The fundamental error exception is extremely narrow." *Id.* (citations omitted).

Truman argues that the parents of three of the four victims, John F., Heather C., and Brian T., each gave similar hearsay testimony when testifying as to statements made by their children disclosing Truman's abuse. Although the parents were certainly testifying regarding out-of-court statements, the statements were not offered to prove the truth of the matter asserted. Each of the parents provided a similar narrative pattern: (1) describing the relationship Truman had with their child, (2) describing the manner in which they were informed of the sexual abuse, and (3) describing their subsequent confrontation with Truman. None of the contested statements went into detail regarding the specific acts of sexual abuse

9

alleged.  Rather they were offered to establish a narrative of the events surrounding the

disclosures, i.e. when and how each of the parents became aware of the allegations.

Even assuming the statements were hearsay, they were certainly not "blatant violations

of basic and elementary principles" sufficient to find fundamental error.  *Cole*, 970 N.E.2d at

782.  Furthermore, "an error in the admission of evidence does not justify reversal if the

evidence is cumulative of other evidence presented at trial.  Neither does the erroneous

admission of evidence require reversal if there is substantial independent evidence of

guilt…."  *Id.* at 784.  All details of the sexual abuse necessary to prove the elements of the

charged offenses were provided by the victims' testimony.  None of the non-victim witnesses

provided any testimony which was necessary to the conviction nor did they vouch for the

credibility of the victims.   As such, we find that no fundamental error occurred.

### III. Sentence Challenge

Truman contends that the trial court abused its discretion in imposing his sentence.

> As long as the sentence is within the statutory range, it is subject to
> review only for an abuse of discretion.  *Anglemyer v. State*, 868 N.E.2d 482,
> 490 (Ind. 2007), *aff'd on reh'g*, 875 N.E.2d 218 (Ind. 2007).  An abuse of
> discretion occurs if the decision is clearly against the logic and effect of the
> facts and circumstances before the court, or the reasonable, probable, and
> actual deductions to be drawn therefrom.  *Id.*  One way in which a trial court
> may abuse its discretion is by failing to enter a sentencing statement at all.  *Id.*
> Another example includes entering a sentencing statement that explains
> reasons for imposing a sentence, including aggravating and mitigating factors,
> which are not supported by the record.  *Id.* at 490-91.
> Because the trial court no longer has any obligation to weigh
> aggravating and mitigating factors against each other when imposing a
> sentence, a trial court cannot now be said to have abused its discretion by
> failing to properly weigh such factors.  *Id.* at 491.
>
> * * * *
>
> This does not mean that criminal defendants have no recourse in

10

challenging sentences they believe are excessive. *Id.* Although a trial court may have acted within its lawful discretion in determining a sentence, Appellate Rule 7(B) provides that the appellate court may revise a sentence authorized by statute if the appellate court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Id.*

*Sharkey v. State*, 967 N.E.2d 1074, 1078 (Ind. Ct. App. 2012). Truman contends that trial court failed to give adequate weight to the mitigating factors proffered by Truman at the sentencing hearing, specifically his lack of criminal history and that he financially supports his wife. However, as stated above, a trial court cannot abuse its discretion by failing to properly weigh such factors. *Id.* Truman also raised additional mitigating factors in his appellate brief which were not raised at the sentencing hearing, specifically the fact that he does not abuse drugs and has a close network of friends and family. (Appellant's Br. 28) However, Truman is precluded from raising additional mitigating circumstances on appeal. "If the defendant does not advance a factor to be mitigating at sentencing, this Court will presume that the factor is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal." *Spears v. State*, 735 N.E.2d 1161, 1167 (Ind. 2000).

The judgment of the trial court is affirmed.

NAJAM, J., and MATHIAS, J., concur.